Commonwealth *v.* Alston, Appellant.

Submitted April 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James Alston,* appellant, in propria persona.

*Michael J. Rotko,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1968:

James Alston was found guilty on March 17, 1966 by a jury of assault and battery with intent to ravish

and corrupting the morals of a minor. A sentence of 2-1/2 to 5 years was imposed for the assault conviction and 18 months to 3 years for the morals conviction, said sentences to run concurrently. The Superior Court affirmed these convictions per curiam without opinion. See *Commonwealth v. Alston*, 209 Pa. Superior Ct. 731, 226 A. 2d 204 (1967). Alston then filed a March 15, 1967 petition under the Post Conviction Hearing Act which was denied and this denial also affirmed per curiam by the Superior Court.[1] See *Commonwealth v. Alston*, 211 Pa. Superior Ct. 705, 234 A. 2d 222 (1967). A petition for allocatur was filed and subsequently granted.

The contention now pressed is that perjury by a Commonwealth witness was employed to secure appellant's conviction. The Commonwealth stipulated below that Miss Agnes Mallatrath did in fact lie concerning her qualifications as a medical technician with expertise in forensic laboratory diagnosis. *Napue v. Illinois*, 360 U.S. 264, 79 S. Ct. 1173 (1959), sets forth the guidelines governing any post-conviction claim that a conviction was procured through use of perjured testimony (supra at 269, 79 S. Ct. at 1177): "[I]t is es-

---

[1] Alston has filed other Post Conviction Hearing Act petitions. His first, filed July 11, 1966, alleged that evidence was introduced at trial procured by an unconstitutional search and/or arrest, that a coerced confession was employed, that his trial counsel was incompetent, that he was denied counsel at a time when such was constitutionally required and that the Commonwealth unconstitutionally suppressed evidence. This petition was dismissed as untimely since Alston's appeal was then pending before the Superior Court. His second is the one now under review. Other than the allegations of perjured testimony and after-discovered evidence, this petition includes an allegation that a constitutional right not recognized at the time of trial was violated. However, no facts are alleged to support this allegation. Finally, Alston filed a third petition on April 5, 1967 containing allegations identical to those pressed in his second petition.

tablished that a conviction obtained through use of false evidence, *known to be such by representatives of the State,* must fall under the Fourteenth Amendment, . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. . . . *The principle that a State may not knowingly use false evidence,* including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." (Emphasis supplied.)

*Napue* thus requires that the perjured testimony have been employed with either the acquiescence or knowledge of the state. However, in a document attached to his post-conviction form which appellant denominated as a writ of habeas corpus, Alston admitted "that the state had no intention of purposely presenting this witness to perjuring [sic] herself to get a conviction and believes that the state presented this witness in good faith." Given this admission, appellant's allegation does not meet the *Napue* knowledge requirement.

Alternatively, Alston contends that the after-discovered evidence of Miss Mallatrath's falsification of her qualifications is sufficient to support the grant of a new trial despite the fact that the Commonwealth had no knowledge at the time of trial of her prejury. The standards here applicable are enunciated in *Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A. 2d 13, 17 (1960), cert. denied, 368 U.S. 884, 82 S. Ct. 138 (1961) : "In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence . . . must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result: [citations omitted]." See also *Commonwealth v. Clanton,* 395 Pa. 521, 151 A. 2d 88

(1959); *Commonwealth v. Green,* 358 Pa. 192, 56 A. 2d 95 (1948). To evaluate the likelihood of a different result, it is necessary to place Miss Mallatrath's testimony in context. The Commonwealth's case against Alston consisted primarily of testimony of the ten year old prosecutrix, which was corroborated by her mother, detailing her contact with appellant. Miss Mallatrath's sole contribution comprised testimony that her laboratory tests of a handkerchief found on Alston's person revealed the presence of seminal fluid.[2] Faced with the prosecutrix's testimony as well as that of her mother, we believe that exclusion of Miss Mallatrath's laboratory findings would not "likely compel a different result" and thus conclude that a new trial on the basis of this after-discovered evidence is not required.

Finally, appellant contends that his post-conviction counsel was ineffective and that he was not present at his "hearing" as required by §9 of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §9, 19 P.S. §1180-9 (Supp. 1966). Assuming arguendo that appellant's right to effective post-conviction counsel is identical to his right to effective trial counsel, we fail to find any reasonable alternative available to counsel which he did not employ sufficient to meet the test found in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599,

---

[2] In an attempt to explain the presence of seminal fluid on his handkerchief, Alston insisted that it had been employed during intercourse with the prosecutrix's grandmother. It could therefore be argued, as does the Commonwealth, that Miss Mallatrath's testimony was totally unnecessary since appellant admitted that his handkerchief contained seminal fluid. However, appellant perhaps would not have felt obliged to offer any explanation if the laboratory tests were never introduced, and thus we have not considered appellant's testimony in evaluating his after-discovered evidence contention.

235 A. 2d 349 (1967). Although the court below did entertain oral argument, its action was not equivalent to the hearing contemplated by §9 and appellant's presence was therefore not necessary. Simply, since this petition did not allege facts which, if proven, would have entitled Alston to relief, a hearing was not necessary and, in fact, the brief proceeding below could in no way be properly classified as a hearing.

Orders affirmed.

Mr. Chief Justice BELL concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

I dissent solely because the question of the competency of Miss Mallatrath and its impact on the trial and resulting verdict is of such serious import that such question should be thoroughly briefed and orally argued before our Court.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

The action of the majority again demonstrates a complete lack of judicial restraint. The author of the majority opinion granted the allocatur in this case apparently not because he disagreed with what the Superior Court had done, but rather with a preconceived design to express his views of what should be done in the myriad of cases such as this which are soon to find their way to the appellate courts. It is obvious from reading the majority opinion that the Court's efforts in this respect have indeed been wasted because this case does not present the proper landscape in which we should render pronouncements determining the vexatious problem generated by Miss Mallatrath's testimony. If the majority's objective were to obviate possible future appeals in other cases in which Miss Mallatrath qualified and testified, it has certainly failed to achieve its purpose. The majority,

by its decision, requires an analysis of the facts and circumstances of each and every case in which Miss Mallatrath's laboratory findings were presented in order to determine whether the lack of those findings would "likely compel a different result." Hence, the majority by failing to espouse a rule of law, and by making an *ad hoc* determination of the impact of her testimony on the outcome of this case, has in my view accomplished nothing more than if the allocatur had in the first instance been denied. It seems to me the majority had but two alternatives in disposing of the instant case in order to achieve the desired purpose, i.e., (1) determine that Miss Mallatrath's testimony was admissible even though she lacked the necessary qualifications to be classified as an expert, and thus deny new trials in every case in which she testified, or (2) determine that her testimony was inadmissible and require new trials in every case. Since the majority has chosen to dispose of these cases on an *ad hoc* basis, it would have been more judicious to have just denied the allocatur.

Moreover, the brief of appellant who appeared in pro persona, was most inadequate and of practically no assistance to the Court in helping to formulate any meaningful determination of this vexatious problem. For these reasons I must conclude that (1) this was a most improper case for the grant of allocatur, and (2) if the issues raised by appellant were important enough to warrant the grant of allocatur, this Court should have invoked Rule 80 of the Rules of the Supreme Court of Pennsylvania, which permits our Court, in its discretion, to order oral argument and to appoint counsel in order to have an effectively litigated issue in the tradition of our heralded adversary system.

I dissent.