## Commonwealth *v.* Coleman, Appellant.

Submitted November 10, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Peter A. Galante,* for appellant.

*Martin H. Belsky* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 22, 1970:

On July 1, 1957, Frank McCoy and James Allen entered the grocery store owned by Gaetano Sabelli, a former employer of McCoy, and perpetrated an armed robbery, during which McCoy shot and killed Sabelli while Allen acted as "lookout." McCoy was tried by a jury and convicted of murder in the first degree, sentenced to death and subsequently executed. Allen pleaded guilty to a charge of murder generally, was found guilty of first degree murder and was sentenced to life imprisonment. The Commonwealth then tried appellant Coleman, charging that he was a participant, driving the "get-away" car and therefore an accessory before and after the fact. Appellant was brought to trial before the Honorable BERNARD J. KELLEY and a jury on June 22, 1959, on Indictment No. 993, April Sessions, 1958, charging murder.

At the trial, both McCoy and Allen testified for the Commonwealth. Their testimony established that when appellant drove McCoy and Allen to the neighborhood of the crime, he had full knowledge that McCoy had a gun which he intended to use in committing a robbery of Sabelli's store.

Appellant's defense was that he knew nothing about the plans of McCoy and Allen for the robbery, or McCoy's possession of a gun. He only knew what Allen told him, which was that Allen and McCoy were to borrow money from a numbers writer. He had never met McCoy before McCoy got into his car the morning of the robbery.

The jury must have believed Allen and McCoy, not Coleman, because on June 25, 1959, appellant was found guilty of murder in the first degree and the jury fixed the penalty at life imprisonment. On January 4, 1961, we affirmed the judgment of sentence. *Commonwealth v. Coleman*, 402 Pa. 238, 166 A. 2d 525 (1961).

Appellant filed a petition for a new trial one year later on the grounds of after-discovered evidence. Judge KELLEY heard testimony by Frank McCoy on January 25, 1962, shortly before he was executed. At that hearing McCoy's testimony did not contradict the testimony he had given at Coleman's trial, where he testified that he never knew Coleman before, that he heard Allen tell Coleman that they were going to see a numbers writer, but that he and Allen discussed the robbery in Coleman's presence. However, he did state for the first time that Coleman knew nothing about the robbery or the plans for the robbery and he refuted the testimony which Allen had given at Coleman's trial, namely that the robbery had been discussed by the three men at breakfast that morning.

On January 9, 1963, at a hearing before Judge KELLEY, Allen recanted the testimony he had given at Cole-

man's trial. Allen stated that his original statement to the police, which did not implicate Coleman, was true and that his testimony at Coleman's trial, which contradicted his previous statement, was perjury. He again testified that appellant knew nothing about the robbery and that he (Allen) had lied at appellant's trial because he was angry at appellant for refusing to help him obtain a lawyer and for going out with his girl while he (Allen) was in jail. In addition, Allen testified that his decision to implicate Coleman was strengthened by favors he received from the District Attorney's office, and promises made by men at that office not to oppose him in having his sentence commuted and to help him to receive a better job while in prison.

After "due and careful consideration," Judge KELLEY denied appellant's petition for a new trial, nunc pro tunc, October 23, 1964.

On August 20, 1968, the appellant filed a Post Conviction Hearing Act petition, alleging, *inter alia*, that he was entitled to a new trial because of the exculpatory evidence shown in the post-trial testimony of Frank McCoy and James Allen.

If the lower court had believed the recanting testimony, a new trial would have been required.

The tests for granting a new trial in a criminal case on the ground of after-discovered evidence were set forth succinctly by the Superior Court in the case of *Commonwealth v. Hanes,* 162 Pa. Superior Ct. 206, 57 A. 2d 165 (1948). At page 209 the court stated: "A new trial in a criminal case will be awarded on the ground of after-discovered evidence where the evidence in question (1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely for impeaching credibility of a

witness; and (4) is of such nature and character that a different verdict will likely result if a new trial is granted."

If believed, the sworn testimony of Frank McCoy and James Allen, contradicting their previous testimony, would clearly require a different verdict because appellant's original conviction depended on the testimony given by McCoy and Allen at trial.

After a hearing before Judge KELLEY on November 28, 1968, appellant's petition was denied in an opinion filed February 26, 1969. From this order he prosecuted this appeal.

The well-established rule is that an appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion. *Commonwealth v. Green,* 387 Pa. 515, 128 A. 2d 577 (1957), *Commonwealth v. Sholder,* 201 Pa. Superior Ct. 642, 644-645, 193 A. 2d 632 (1963).

Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. *Commonwealth v. Scull,* 200 Pa. Superior Ct. 122, 130, 186 A. 2d 854 (1962). There is no less reliable form of proof, especially when it involves an admission of perjury. *Commonwealth ex rel. Leeper v. Russell,* 199 Pa. Superior Ct. 93, 96, 184 A. 2d 149 (1962), *Commonwealth v. Sholder, supra.*

The only evidence which would corroborate the new testimony Allen offers in addition to Coleman's consistently stated explanation is Allen's first statement to the police and the testimony of McCoy. We cannot say that Judge KELLEY's decision to refuse to believe Allen and McCoy now, after a full hearing on which he was able to evaluate the demeanor of the witnesses

and the reasons for their inconsistent statements was an abuse of discretion.

Order affirmed.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Solely on the basis of testimony given by two alleged co-felons, appellant stands convicted of first degree murder. Both co-felons have now recanted their testimony. The majority holds that appellant's right to a new trial depends on whether the hearing court believed the recanting testimony, and that since it did not, its decision to deny a new trial must be affirmed. I believe, however, that we must examine this case somewhat more closely and that, given the nature of the original testimony and the facts surrounding the recanting testimony, the hearing court erred when it denied appellant a new trial. Hence, I must dissent.

Appellant was tried as a participant in the robbery-murder of a grocery store owner. The issue in dispute at appellant's trial was whether, when he drove his co-felons to the grocery store, he knew that they were going there to commit a robbery. Both Frank McCoy, the murderer, and James Allen, the other robber, testified that appellant was informed of the robbery beforehand; appellant testified that he thought he was driving McCoy and Allen to a numbers writer to borrow money. McCoy testified that appellant knew McCoy had a gun; appellant denied this. The jury evidently believed the Commonwealth's witnesses and convicted appellant.

Prior to appellant's trial, McCoy had been found guilty of first degree murder and sentenced to death. We granted him a new trial, see 401 Pa. 100, 162 A. 2d 636 (1960); but he was again found guilty and sentenced to death. On July 18, 1961, this Court affirmed the judgment, see 405 Pa. 23, 172 A. 2d 795 (1961). On January 25, 1962, shortly before he was to be exe-

cuted, McCoy recanted the testimony he had given at appellant's trial. He testified under oath that appellant "didn't know about this crime" and that appellant had not seen the gun.

It was not until nearly one year later that the Commonwealth's second witness, Allen, likewise recanted his testimony. On January 9, 1963, Allen, admitting under oath that he had committed perjury at appellant's trial, testified that appellant was completely innocent. This was now in conformity with the testimony Allen gave at his own trial, where he stated that appellant was unaware that a crime was to be committed. Further, Allen indicated why he had lied at appellant's trial. While Allen was in jail and appellant out on bail, appellant had refused Allen's request for money to hire a lawyer, and had attempted to date Allen's girl friend. Allen is presently in jail serving a life sentence for his participation in the murder.

Thus appellant stands convicted solely on testimony which originally emanated from a corrupt source, alleged co-felons, and has now been fully and explicitly recanted. One witness, Allen, has returned to his former story exculpating appellant, giving a highly credible reason for his deceitful deviation. The other, McCoy, had changed his testimony only after all avenues of appeal had been exhausted and he was about to die. Both men are now admitted perjurers. Appellant, on the other hand, has consistently told the same account, and his actions on the day of the crime were perfectly consistent with his testimony.

I think that under these circumstances it is now for a jury to determine where lies the truth. It is not now a question of whether the hearing court believed or disbelieved the recanting testimony. For the recantation by both Commonwealth witnesses, in the circumstances of the instant case, places the Commonwealth's trial evidence too much in doubt. We should not for-

get our "reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S. Ct. 1444, 1451 (1968). Appellant deserves the right to have a jury pass on the credibility of the recanting testimony.

Accordingly, I dissent and would grant appellant a new trial.