Commonwealth *v.* Wilson, Appellant.

Submitted September 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Marshall E. Kresman,* for appellant.

*Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, November 23, 1971:
Order affirmed.

---

CONCURRING OPINION BY SPAULDING, J.:

Appellant Thomas Wilson was convicted of assault and battery with intent to ravish and related offenses, by the Honorable Joseph L. McGLYNN, JR., of the Court of Common Pleas of Philadelphia, sitting without a jury. The most damaging evidence against appellant was the testimony of Mrs. Agnes Mallatratt Douglas, then a technician with the Philadelphia Police Department, who testified that a thread from the assault victim's dress was found on appellant's clothing—that microscopic examination revealed that it was identical in color, thickness, and twist to embroidery on the victim's shift. In *Commonwealth v. Alston,* 430 Pa. 471, 243 A. 2d 404 (1968), the Commonwealth has stipulated that this witness lied in all cases in which she testified that she had completed a course in forensic laboratory diagnosis at Temple University. This is one of the cases where the evidence that Agnes Mallatratt had lied about her academic qualifications was not discovered until after trial.

*Commonwealth v. Mount,* 435 Pa. 419, 257 A. 2d 578 (1969), which considered those cases in which Mallatratt testified before it was revealed that she had perjured herself as to her qualifications as an expert, is controlling here. In reversing a conviction because of this witness' testimony, the Court, per Justice JONES, stated: "The inherent difficulty in this case is that the court below *assumed* Miss Mallatratt's qualifications.

. . . Even though Miss Mallatratt lacked the necessary theoretical and academic background for accreditation as a laboratory technician, it may well be that the practical experience gained over a long period of years in laboratory work did qualify her to make proper and sound laboratory findings. However, the record in the court below presents no evidence of inquiry in this area." 435 Pa. at 426-427.

In the instant case, Mallatratt did testify, in addition to her perjurious statements as to her academic background, that she had eight years experience in laboratory work, the first five of which were devoted to on-the-job training. In refusing to grant a new trial, the trial judge held that the crucial testimony was based on a microscopic examination of threads and was merely based on the witness' observation, stating that her testimony: "[W]as not the product of scientific tests or professional experience but was based merely on her powers of observation. Thus her qualifications are immaterial, except insofar as they are applicable to her ability to use a microscope." He further found that "she had sufficient practical experience to make proper and sound laboratory findings that are admissible under the rules of evidence as expert or opinion testimony".

I agree that the witness was qualified to testify based on her practical experience, despite her lack of academic credentials. I also agree with the court below that the after-discovered evidence of perjury merely impeaches credibility and therefore does not justify the granting of a new trial. *Mount, supra,* citing *Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A. 2d 13 (1960), *cert. denied,* 368 U.S. 884 (1961). However, I feel the learned trial judge's conclusion, that Mallatratt's testimony as to the microscopic comparison of threads was admissible even if she was not a qualified

expert since it was based on "observation", is incorrect. In any instances where Mallatratt did not testify as to her practical experience, but was accepted as an expert based on academic credentials about which she lied, she was not qualified to give expert testimony involving microscopic comparisons. The record presently before us discloses testimony as to her qualifications based on practical experience.

I concur in affirming the judgment of sentence.

HOFFMAN, J., joins in this concurring opinion.

———

CONCURRING OPINION BY CERCONE, J.:

This is an appeal from the lower court's refusal to grant appellant a new trial after a jury's verdict of guilty of the charge of assault and battery with intent to ravish and related offenses.

The essential issue of this case involves the testimony of a Miss Agnes Mallatratt.* She testified on behalf of the Commonwealth as a criminalistic technician and expert witness. Her testimony related to several laboratory findings regarding substances found upon the clothing of both the victim and the defendant-appellant. Since the appellant's conviction, it has been discovered that Miss Mallatratt did not possess the qualifications she claimed to possess in order to establish her as an expert witness, in that inter alia, she lied in testifying that she had completed a course in forensic laboratory diagnosis at Temple University.

It is appellant's claim that this after-discovered evidence of Miss Mallatratt's perjury is such as to require a new trial in his case. The issue of after-discovered evidence concerning Miss Mallatratt's perjured identification of herself and her qualifications as an expert witness arose in two prior cases in Pennsylvania

———

* Now Mrs. Agnes Mallatratt Douglas.

when Miss Mallatratt was a witness. Two appeals involving this problem reached the Supreme Court: *Comm. v. Alston,* 430 Pa. 471, 243 A. 2d 404 (1968), and *Comm. v. Mount,* 435 Pa. 419, 257 A. 2d 578 (1969). In *Mount,* although the Supreme Court acknowledged the fact that experience in a laboratory might compensate for a lack of formal education, the record in that case had failed to show inquiry at trial into Miss Mallatratt's practical experience. In the instant case, however, Miss Mallatratt testified that she had been employed by the Philadelphia Police Department for eight years, the first five of which were "in-training". After that training period, she passed a civil service examination. I agree with the learned opinion of the trial judge in concluding that Miss Mallatratt did possess sufficient practical laboratory experience to qualify her to render the relatively basic findings testified to in this case.

In *Comm. v. Alston,* supra, a similar factual situation was before the court. The Commonwealth's case against Alston included the testimony of the prosecutrix, describing her contact with the appellant, which was corroborated by her mother. In the *Alston* case Miss Mallatratt gave testimony concerning laboratory tests she performed on a handkerchief found on Alston's person. Contained in defendant's post conviction appeal in the *Alston* case was the claim that perjury by the witness, Miss Mallatratt, was employed to secure his conviction and that this after-discovered evidence was sufficient to support the grant of a new trial. In deciding the case, the Supreme Court applied the standards enunciated in *Comm. v. Schuck,* 401 Pa. 222, 164 A. 2d 13 (1960), cert. denied 368 U.S. 884, 82 S. Ct. 138 (1961): "In order to justify the grant of a new trial on the basis of *after*-discovered evidence, the evidence . . . must not be cumulative or merely impeach credibility, and *must be such as would likely compel a different result*: (citations omitted)." (Em-

phasis added.) In rendering its decision, the court held that a new trial on the basis of this after-discovered evidence was not required under the standards set forth in *Comm. v. Schuck* in that the exclusion of Miss Mallatratt's laboratory findings would not "likely compel a different result."

In the instant case, the fact that Miss Mallatratt misrepresented her qualifications would certainly have an adverse bearing on her credibility, but it would not likely compel a different result. Here, as in the *Alston* case, there was sufficient evidence upon which to base a finding of guilt, even if the testimony of Miss Mallatratt were excluded. An officer testified he heard loud screams coming from an alleyway between two houses on Hamilton Street. He stopped the patrol car, jumped out, and immediately observed a Negro male wearing a plaid shirt and a dark pair of trousers run from between the two buildings. He chased the man down Hamilton Street when the assailant turned the corner onto 35th Street and disappeared from sight. Defendant was found only moments later hiding under a car at that corner wearing clothing identical to that of the man whom the policeman had chased and which also matched the description given by the victim. The defendant admitted at trial that he had been running from a policeman who was chasing him. Furthermore, the defendant had alcohol on his breath, as did the victim's assailant.

Based on these considerations, I feel there was enough circumstantial evidence presented to the jury to sustain a verdict of guilty even without the evidence presented by Miss Mallatratt.

I concur in affirming the judgment of sentence.