Commonwealth *v.* Thomas, Appellant.

44

Argued November 16, 1971. Before Jones, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Marvin Fine,* with him *A. Charles Peruto,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Chief Justice Jones, June 28, 1972:

In 1966, following a jury trial, appellant was convicted of first-degree murder for the killing of Edith Connor, a twelve-year old child. Post-trial motions were argued and dismissed by a court en banc; however, on June 21, 1967, a second motion for new trial was granted. The circumstances and reasons for the new trial will be related *infra.*

Appellant's second jury trial commenced February 17, 1969, and resulted in appellant's conviction of first-degree murder. Following disposition of post-trial mo-

tions by a court en banc, appellant was subsequently sentenced to life imprisonment. This appeal followed.

The body of the deceased was discovered on September 29, 1964, at 3:00 p.m., in a three-foot wide alley running between Poplar and Cambridge Streets in the City of Philadelphia. The alley is also the rear boundary for properties located on 40th Street and Sloan Street. All the properties on 40th and Sloan Streets have rear wooden fences with a door leading to the alley from the back yard of each property. The discovery was initially made by a young child, who notified a school crossing guard stationed nearby. The police arrived, pronounced the girl dead at the scene and removed the body to the morgue. The body was then examined by one Dr. Edward Campbell, Medical Examiner and Forensic Pathologist. The deceased's blouse had been torn and the zipper of her dungarees (men's style) was partially ripped off. The dungarees were also torn at the inner seams of the thighs on both sides of the crotch. The crotch seam of the deceased's panties was likewise torn. The cause of death was attributed to strangulation by ligature. There were also bruises to the skin of the neck, a broken bone on the right side of the neck and bruises of the voice box. Tears were found in the child's rectum and testing ascertained the presence of acid phosphatese in the vagina.

The clothing of the deceased was delivered to the Police Department Laboratory where brushings and microscopic examination disclosed particles of leather, leather dust, glue, polish, dog hairs, fiber and chips of paint adhering to the clothing. These findings led to the issuance of three search warrants for the person of and premises occupied by the appellant, which premises were located at 1109 North 40th Street and consisted of a shoe repair shop on the ground floor and living

quarters in the rear of the shop. The execution of these warrants resulted in obtaining, *inter alia,* paint scrapings from various parts of the premises, specimens of leather, glue, fibers, threads and hairs, clothing of appellant, bed sheets, bedspreads and drapes. These specimens were delivered to the Police Department Laboratory, analyzed by a Dr. Edward J. Burke, then the Laboratory Director, and compared with items removed from the deceased's clothing. The Commonwealth's entire case rested upon the testimony of Dr. Burke with reference to the similarity of the specimens.

In support of his alternative motions, appellant raises seven allegations of error: (1) the second trial of appellant constituted double jeopardy; (2) there was insufficient evidence to charge the jury on rape as the designated felony within the felony-murder rule; (3) the testimony of Dr. Edward Burke was admitted without establishing the sufficient requisites to satisfy the chain of evidence; (4) appellant's expert witness was not provided an opportunity to examine the physical evidence; (5) the court below refused to charge that opinion evidence is low-grade testimony; (6) the court below erroneously determined sufficient probable cause existed for the issuance of the search warrants; and (7) appellant's statements admitted into evidence were not preceded by the requisite constitutional warnings.

Referring to appellant's double jeopardy allegation, it becomes necessary to articulate the circumstances giving rise to appellant's second trial. He was initially tried in April 1966 and convicted by a jury of murder in the first degree, the penalty being fixed at life imprisonment. Post-trial motions were subsequently filed, argued and dismissed on December 19, 1966. Prior to imposition of sentence, it was ascertained in a collateral proceeding that one Agnes Mallatratt (now Agnes Mal-

latratt Douglas), a technician employed in the Chemical Laboratory of the Philadelphia Police Department for a substantial period of time, had falsified, under oath, her qualifications as an expert in the field of microscopic comparisons. The false testimony did not go to Miss Mallatratt's working experience but rather pertained to her educational background. As a result, appellant filed a renewed motion for new trial, which was unopposed by the Commonwealth. On June 21, 1967, appellant was granted a new trial by agreement.[1]

It is firmly established that a defendant who has been convicted and upon his own motion secures a new trial may not plead double jeopardy on his second trial. *Com. v. Melton,* 406 Pa. 343, 178 A. 2d 728 (1962); *Com. ex rel. Patrick v. Banmiller,* 398 Pa. 163, 157 A. 2d 214 (1960). The result does not vary because the Commonwealth acquiesces in the grant. Rather, the voluntary act of the appellant in seeking and receiving

---

[1] This is the third case to come before this Court involving the testimony of Miss Mallatratt. In the two previous cases, *Com. v. Mount,* 435 Pa. 419, 257 A. 2d 578 (1969), and *Com. v. Alston,* 430 Pa. 471, 243 A. 2d 404 (1968), we were confronted with the issue of whether a new trial was required following discovery of the false testimony. In the *Mount* case, we vacated the sentence and remanded to the court below with directions to determine Miss Mallatratt's qualifications and then to ascertain what weight should be given to her testimony. The court below found Miss Mallatratt qualified as an expert, basing its conclusion on her working experience. On appeal, we again remanded with orders to permit Mount full opportunity to cross-examine the Commonwealth's witnesses and present his own experts. *Com. v. Mount,* 443 Pa. 245, 279 A. 2d 143 (1971). Further hearings were held and in an opinion filed April 6, 1972, the court below again found Miss Mallatratt qualified to testify as an expert based on her "extensive experience in the field." Mount has appealed the lower court's decision.

In the instant case, we are not directly confronted with the issue presented in *Alston* and *Mount* since appellant's motion for new trial was granted.

a new trial constitutes a waiver of any double jeopardy claim.

The Commonwealth's case proceeded on two theories: either the killing was "willful, deliberate and premeditated" or resulted from the "perpetration of, or attempting to perpetrate any . . . rape . . . ,"[2] *i.e.,* felony murder. Appellant contends the evidence was insufficient as to the issue of rape and, therefore, that issue should not have been raised in the Commonwealth's opening and closing remarks or in the trial court's instructions to the jury. The record evidence indicated the zipper of deceased's dungarees was partially ripped off, the thigh portion of the dungarees was torn on both sides of the crotch seam, and the victim's panties were likewise ripped across the crotch seam. One Dr. Campbell, the medical examiner, testified to tears in the victim's rectum—the injuries consistent with the introduction of the male organ into that area. The test results of smears taken from the vagina of the deceased were strongly positive for acid phosphatese, which is indicative of the presence of male semen. Dr. Campbell testified that the injuries occurred near the time of death. Although the evidence was circumstantial, it was sufficient to raise the reasonable inferences that the deceased had been raped or that rape had been attempted by the appellant at or near the time of death. *Com. v. Petrisko,* 442 Pa. 575, 275 A. 2d 46 (1971). Appellant contends, however, that the testimony of Dr. Edward Burke, who also examined the smears and found them to be negative with respect to

---

[2] "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree." Act of June 24, 1939, P. L. 872, §701, *as amended,* 18 P.S. §4701.

acid phosphatese, vacates the testimony of Dr. Campbell. The jury is the arbiter of conflicting testimony and may accept all, part or none of it. *E.g., Com. v. Hornberger,* 441 Pa. 57, 270 A. 2d 195 (1970) ; *Com. v. Ewing,* 439 Pa. 88, 264 A. 2d 661 (1970).

Appellant's third allegation of error concerns the testimony of Dr. Edward Burke. Dr. Burke, now retired, had been Director of the Philadelphia Police Department Laboratory and testified as the Commonwealth's chief witness at appellant's second trial. The bulk of Dr. Burke's testimony concerned analysis and comparisons of fibers and materials removed from the clothing of the deceased with fibers and materials recovered from the clothing, shop, furnishings and rear yard of the appellant. The striking similarities of over twenty-five specimens, if properly admissible, overwhelmingly support the Commonwealth's theory that appellant killed the deceased and deposited her body in the rear alley.

As previously noted, the Commonwealth's case was grounded entirely on circumstantial evidence. Appellant contends the Commonwealth failed to establish the necessary links in the chain of custody over the evidentiary specimens so as to insure the integrity of same and it was prejudicial error to permit Dr. Burke to testify as to his expert evaluation of the specimens. Appellant does not seriously question the integrity of the custodial process prior to delivery to the Police Department Laboratory. Standard specimens, recovered from appellant's clothes, store, apartment and rear yard pursuant to three search warrants, were delivered to the laboratory (the deceased's clothing was kept separate from the standard specimens). The clothing was then brushed by two lab technicians, one being Miss Mallatratt, and placed beside a standard specimen under a comparison microscope. Dr. Burke testified to

being present during the brushing of deceased's sweater, dungarees and underwear. He also personally examined each item under the microscope and testified as to the similarities between the standard specimens and the specimens removed from the deceased's clothing. The items ranged from fibers to six-layered paint chips to particles of leather wax.

Since Miss Mallatratt did not testify, appellant argues that the absence of her testimony, *i.e.*, the party who placed the brushings under the microscope, vitiates the integrity of the evidence chain. We do not agree; rather we accept the opinion of the court below which characterized the tasks of brushing and preparing the specimens for later examination by Dr. Burke as mechanical in nature and not affecting admissibility. The jury was instructed it must be satisfied that the specimens Dr. Burke examined under the microscope were the same specimens removed from the deceased's clothing as opposed to the standard specimens. There is no merit in this assignment of error.

Appellant next contends the Commonwealth improperly limited the examination of evidence by appellant's expert witness. By order of court, the Commonwealth was directed to provide to one Professor Wolfgang the specimens which were the basis of Dr. Burke's testimony. The order was issued during appellant's first trial in 1966 during which Professor Wolfgang was present. In 1968, prior to appellant's second trial, Professor Wolfgang examined three sets of trays containing slides on which fiber, paint and hair samples were permanently mounted. At that time he was also provided with a microscope with which to examine the slides. The raw materials from which the slides had been made were in the possession of the court. The issue is not the discoverability of these specimens since discovery was granted, *cf., Com. v. Werner*, 444 Pa. 458,

282 A. 2d 258 (1971), but whether appellant's right to a fair trial was prejudiced by the alleged failure of the Commonwealth to provide the exact raw materials for examination by appellant's appointed expert. There has been no showing that the slides provided Professor Wolfgang were anything but the same specimens in the possession of the court, only in a different form. It must also be noted the appellant made no request for the original specimens, no objection was made that his expert's examination was incomplete and no motion was made for a continuance to permit examination of the specimens either prior to or during his second trial. We deem appellant to have waived any objection to this procedure. *See, Com. v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963). *See, also, Com. v. Morris,* 444 Pa. 364, 281 A. 2d 851 (1971); *Com. v. Collins,* 440 Pa. 368, 269 A. 2d 882 (1970).

Appellant further argues that the court below erred by refusing to charge that Dr. Burke's findings and opinions constituted "low grade" testimony. Opinion evidence is correctly classified as "low grade" in situations where the expert testifies not from personal observation but expresses an opinion in response to a hypothetical question. *Girsh Trust,* 410 Pa. 455, 189 A. 2d 852 (1963). The same classification is warranted where the expert's opinion, based on theoretical assumptions, is rebutted by direct evidence. *Handfinger v. Phila. Gas Works,* 439 Pa. 130, 266 A. 2d 769 (1970). Neither situation is applicable to the instant appeal. The foundation of Dr. Burke's testimony and conclusions as to the physical similarity of the specimens was his personal observation. Appellant's expert did not contradict Dr. Burke's testimony; rather he attempted to show the probability that the various specimens could be found anywhere in the immediate area of the crime. In our opinion, Dr. Burke's testimony does not

merit the classification of "low grade" and consequently the court below did not err in refusing to so instruct the jury.

Appellant next contends the three warrants authorizing the search of his premises lacked probable cause and evidence recovered as a result of the warrants was erroneously admitted at trial. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted. *E.g., United States v. Scolnick,* 392 F. 2d 320 (3d Cir. 1968). For our purposes, the only warrant of any consequence is the first, since it is apparent the remaining warrants depended on information recovered from the first seizure.

The warrant was issued on October 6, eight days after the body of the deceased had been discovered. The premises are therein described as a three-story brick building, appellant occupying the first floor comprised of a store and rear living quarters, basement and rear yard. The articles to be seized include dark brown girl's loafers, a pair of red socks, paint scrapings, glue, leather, leather dust, hairs, fibers, threads, bloodstains, bedding or furniture. Probable cause for the warrant was "an examination of the deceased's clothing by the chemical laboratory, and they contained the above items, the above specimens. 1109 North 40th Street is a shoe repair shop located only 50 feet from where the deceased was found." Thus, three factors support a finding of probable cause: (1) the deceased was discovered fifty feet from the rear door of appellant's premises; (2) the shoe repair shop was the only one in the immediate area; and (3) analysis of the deceased's clothing uncovered fiber and materials commonly found in a shoe repair shop. Affidavits for

search warrants must be tested by magistrates and courts in a common sense and realistic fashion. *United States v. Ventresca,* 380 U.S. 102, 85 S. Ct. 741 (1965). We conclude the warrants herein challenged are supported by probable cause and the evidence seized during their execution was properly admitted.

Lastly, appellant argues that several damaging admissions made to the police prior to being warned of his right to remain silent, *Escobedo v. Illinois,* 378 U.S. 478, 84 S. Ct. 1758 (1964),[3] were erroneously admitted at trial. Immediately following the discovery of the victim's body, the police initiated a house-to-house survey encompassing a three to four block radius in an attempt to discover anyone having knowledge of the deceased's disappearance. The appellant was asked if he had seen the child, to which he replied in the negative, stating he did not know the deceased. When asked by the officers to see the rear yard, appellant replied his dog was kept there and was vicious. The statements were later determined to have been false and were admitted to show an attempt to divert the police from their investigation. The statements were clearly admissible. The police were engaged in a general fact-finding process in that they were interviewing everyone in the immediate area. There is not the slightest evidence that the investigation had begun to focus on the appellant as a suspect. *Escobedo v. Illinois,* 378 U.S. at 490-91, 84 S. Ct. at 1765. *See, Com. v. Bordner,* 432 Pa. 405, 247 A. 2d 612 (1968). Appellant's final contention is without merit.

---

[3] Appellant's first trial commenced on April 18, 1966. The requirements of *Miranda v. Arizona,* 384 U.S. 436 (1966), are inapplicable to a retrial where the first trial commenced prior to June 13, 1966. *Jenkins v. Delaware,* 395 U.S. 213 (1969). We hasten to add, however, our determination on this issue would be the same even under *Miranda. See, e.g., Com. v. Marabel,* 445 Pa. 435, 283 A. 2d 285 (1971).

54

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.