625 A.2d 1197

**COMMONWEALTH of Pennyslvania, Appellant**

v.

**Samuel BONACCURSO.**

Superior Court of Pennsylvania.

Argued January 7, 1993.

Filed April 22, 1993.

Reargument Denied June 22, 1993.

480

Marilyn F. Murray, Asst. Dist. Atty., Philadelphia, for Com. appellant.

F. Kirk Adams, Media, for appellee.

Before CIRILLO, BECK and KELLY, JJ.

CIRILLO, Judge:

The Commonwealth appeals the grant of a new trial to Samuel Bonaccurso who was convicted of first-degree murder in 1978. The post-conviction court found that Bonaccurso was entitled to a new trial because he had been deprived of his right to testify at his original trial and because after-discovered evidence would affect the outcome of the trial. We affirm.

Bonaccurso was charged with murder and possession of an instrument of crime after Ronald Simone was shot to death in front of his (Simone's) Philadelphia car repair shop. Bonaccurso's trial counsel, Robert Simone, pursued a defense of misidentification. Bonaccurso was convicted of first degree murder. Post-trial motions were filed and denied. Bonaccurso then hired Stanford Shmukler to conduct his appeal. Shmukler felt he had a strong appeal based on the failure of the Commonwealth to disclose the existence of a surprise witness. That appeal was not successful. Shmukler then took Bonaccurso's case to federal court on a habeas corpus petition, which was also unsuccessful. Bonaccurso's third attack on his conviction was to ask for relief under the Post Conviction Relief Act, 42 Pa.C.S. § 9543, on two grounds, a constitutional infirmity in his original trial and after-discovered evidence. The Honorable James McCrudden of the Philadelphia Court of Common Pleas found merit in both of Bonaccurso's contentions and granted him a new trial. It is from that order that the Commonwealth appeals.

During Bonaccurso's bench trial the evidence established that the victim, Ronald Simone, rented a car storage lot from Bonaccurso. Bonaccurso had chained and padlocked the lot, apparently because Simone had not paid the rent. At midnight on April 29, 1978, Simone and a friend, Joseph DiFilippo, cut the chain on the lot and towed a 1962 or 1963 Thunderbird from the lot to Simone's car repair shop. The next day, April 30, Bonaccurso was looking for Simone. First he called

Simone's girlfriend and threatened to put Simone "in the hospital." Then he called Simone's garage. About five o'clock in the afternoon of April 30, a maroon Pacer pulled up in front of Simone's garage and the passenger asked for Ronald. Traffic forced the Pacer to go around the block; when it returned to the garage, Simone was standing in front of the garage. DiFilippo, who was at the repair shop Sunday afternoon, and Andre Waddell, a 13–year–old eyewitness who was walking down the street, testified that the passenger in the Pacer fired three shots. DiFilippo heard a click of a misfire and then saw the last shot which went into Simone's right temple and killed him.

The issue at the trial was identification. DiFilippo originally identified Bonaccurso as the shooter in a statement to police. At the preliminary hearing DiFilippo invoked the Fifth Amendment. At trial, DiFilippo was no longer able to identify Bonaccurso as the shooter. Andre Waddell was the surprise witness who identified Bonaccurso as the shooter. Bonaccurso's trial counsel, Robert Simone, mounted a strenuous objection to Waddell's testimony because the Commonwealth had not listed him as a witness when he (Simone) demanded any identification evidence before the trial. Bonaccurso was convicted of first-degree murder and a weapons violation and sentenced to mandatory life in prison.

A different picture of the day's events emerges from testimony during the evidentiary hearing on Bonaccurso's Post–Conviction Relief Act petition. The evidence elicited at the hearing was that Simone was also armed with a gun with which he threatened Bonaccurso and that the final shot was fired in a manner which is not inconsistent with an accidental shooting. Neil Savasano testified that on the day Ronald Simone was killed he was painting an upstairs apartment which overlooked the shooting scene. Savasano said he saw Simone and Bonaccurso arguing, and that both men were holding guns. Savasano left the window to answer the telephone; while he was away from the window he heard gun shots. When Savasano returned to the open window, he heard Simone shout at Bonaccurso to "come back" and saw Simone

point his gun at Bonaccurso. Savasano saw Bonaccurso get back in his car; as he did so, Savasano testified, a last shot was fired and Simone went down. Before Savasano slipped out of the back door of the apartment, he said he saw Simone's brother hide the gun Simone had been holding. Savasano lied to the police at the time of the killing and said he had left the apartment for dinner and had seen nothing.

Bonaccurso testified to the same series of events as recounted by Savasano. He added that when he jumped back in the car, he was ducking down because he was afraid Simone was about to shoot; as he ducked down, Bonaccurso said, his gun went off accidentally. Bonaccurso told essentially the same story on the evening of the shooting to a police officer, who was a friend and not the investigating officer.

We are asked to consider whether the post-conviction court erred when it granted a new trial based on the after-discovered evidence of the testimony of Neil Savasano and others.[1]

■ When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case. *Commonwealth v. Cooney*, 444 Pa. 416, 417, 282 A.2d 29, 30 (1971). The decision to grant a new trial on the basis of after-discovered evidence on a collateral appeal is premised on the standards set forth in the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* A person is eligible for relief if he has been convicted of a crime and is imprisoned, and he can show that his conviction is the result of "[t]he unavailability at the time of trial of exculpatory evidence that subsequently became available and that would have affected the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

---

1. Because we find that Bonaccurso is entitled to a new trial on the basis of after-discovered evidence, we need not address the Commonwealth's first question: whether the post-conviction court erred when it found on collateral appeal Bonaccurso had been deprived of his constitutional right to testify in his own defense when the issue was not raised on direct appeal.

■ To properly sustain a collateral petition for a new trial on the basis of after-discovered evidence, the evidence must have been unavailable at the time of trial, it must be exculpatory, and it must be of such a quality that it would change the outcome of the trial.[2] Evidence which the courts of Pennsylvania have found to be unavailable at the time of trial include social security records which were held in a suspension file and were not accessible to a search by social security number. *Commonwealth v. Valderrama,* 479 Pa. 500, 388 A.2d 1042 (1978). In *Valderrama* the defendant in a first-degree murder case had offered an alibi that he was working in Puerto Rico at the time that the murder was alleged to have occurred in Pennsylvania. He was convicted after the Commonwealth argued to the jury that social security files showed no record of his work in Puerto Rico at the material time. Later it was discovered that his wages had been recorded without a social security number and that the record had been held awaiting the number. He was granted a new trial on the common law standard for after-discovered evidence introduced on direct appeal:

> [T]he evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result.

*Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A.2d 13, 17 (1960), *cert. denied,* 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961). Schuck was convicted of first-degree murder on charges stemming from an ambush killing. He sought to offer after-discovered evidence that he had been in a fist-fight

---

**2.** Testimony of witnesses who testify at trial and then recant is treated in the law as a separate category of after-discovered evidence, one which is not at issue in this case because the witnesses who offered the after-discovered evidence did not testify at trial. *See Commonwealth v. Mosteller,* 446 Pa. 83, 88, 284 A.2d 786, 788 (1971); *see also Commonwealth v. Coleman,* 438 Pa. 373, 264 A.2d 649 (1970). The courts also seldom give credence to the after-discovered evidence of confessions by others, particularly by convicted co-conspirators. *See Commonwealth v. Treftz,* 465 Pa. 614, 351 A.2d 265 (1976); *Commonwealth v. Tervalon,* 463 Pa. 581, 345 A.2d 671 (1975); *Commonwealth v. Swanson,* 432 Pa. 293, 248 A.2d 12 (1968).

earlier in the evening as corroboration of his defense that he was drunk. The court held that the evidence was merely cumulative and did not compel a different result. Other examples of evidence which was unavailable at the time of trial include a bullet lodged in the defendant's skull, previously undetected, which serves to confirm his defense that his victim shot him first and then was killed accidentally or as a suicide in remorse. *Commonwealth v. Cooney, supra.* A witness was after-discovered evidence in *Commonwealth v. Bulted,* 443 Pa. 422, 279 A.2d 158 (1971). In *Bulted,* the prosecutor argued to the jury repeatedly that the defense had failed to produce a "phantom" witness, one Francisco, with whom the victim was allegedly having an affair. The production of Francisco, who confirmed the husband-defendant's version of events, satisfied the after-discovered evidence rule. *Id.*

The question of whether the proffered after-discovered evidence is, in fact, exculpatory is best illustrated by two cases which involve the same after-discovered evidence. A laboratory technician who frequently testified for the Commonwealth was discovered to have falsified her credentials. In one case, *Commonwealth v. Mount,* 435 Pa. 419, 257 A.2d 578 (1969), the perjured lab technician offered the only evidence that a murderer also raped his victim. The three-judge panel sitting on the penalty phase after a guilty plea to an open charge of murder imposed the death penalty, finding that the rape was a brutal, aggravating circumstance warranting execution. *Id.* at 428, 257 A.2d at 582. Since the testimony of the false technician was the only evidence of rape, the state Supreme Court ordered a new trial. The same lab technician's testimony was also the focus of a new trial request in *Commonwealth v. Alston,* 430 Pa. 471, 243 A.2d 404 (1968). There the court found that other evidence amply established the elements of assault and battery, intent to ravish, and corrupting the morals of a minor. The abuser admitted that a handkerchief contained semen; thus, the only issue which remained was when and how it got there. *Id.* at 475, 243 A.2d at 407. Therefore, the discovery that the lab technician's testimony was perjured was not exculpatory.

The final prong of the test for a new trial based on after-discovered evidence is that it "affect the outcome of the trial." 42 Pa.C.S. § 9543(a)(2)(vi). In the common law this standard was expressed as "compel a different result," *Schuck, supra,* or be of such a character that "a different verdict would likely result." *Commonwealth v. Coleman,* 438 Pa. 373, 377, 264 A.2d 649, 651 (1970).

In the case at hand, Bonaccurso premised his trial defense on misidentification, in effect conceding that a first-degree murder may have been committed but that he was not the one who did it. When the Commonwealth's surprise eyewitness, 13–year–old Andre Waddell, identified Bonaccurso as the man who shot Simone, his defense of misidentification fell apart. Bonaccurso argues that he then asked his trial attorney, Robert Simone, if he (Bonaccurso) could take the stand and "tell what really happened." Simone elected to stay with the misidentification defense; Bonaccurso was convicted. On direct appeal, attorney Shmukler also remained with the misidentification defense because he felt he had a strong argument that the Commonwealth had violated its obligations of disclosure to Bonaccurso by surprising him with the testimony of Waddell. Again Bonaccurso said he told Shmukler "what happened and everything."

When we consider whether granting Bonaccurso a new trial was an error of law we must decide whether the evidence was unavailable, whether it is exculpatory, and whether it would affect the outcome of the trial. The first question is easily disposed of. Savasano left the scene and lied to the police about whether he had seen any of that day's events. He was unavailable. Whether the evidence is exculpatory is also straightforward. Bonaccurso's and Savasano's version of the events, if believed, paints a picture of third-degree murder, not first-degree. When a defendant is found guilty of third-degree murder, that verdict implies a verdict of not guilty on the charge of first-degree murder. Therefore, testimony which would make more likely than not a change in degree from first to third is exculpatory.

■ Finding that Savasano's evidence is exculpatory is not, however, the end of our investigation. For a new trial to properly have been granted, the after-discovered evidence also must be of such a character that it would "effect the outcome of the trial." Thus, our question becomes: Is a change in degree of guilt a change in the outcome of the trial? [3]

In three instances in which the after-discovered evidence would have had an affect on the degree of guilt found at trial, the Pennsylvania Supreme Court has granted a new trial. In *Commonwealth v. Cooney, supra,* the defendant had argued that the victim shot him first, that he blacked out, and that the victim was shot either in the struggle or shot herself in suicidal remorse. He was convicted of first-degree murder. When an X-ray revealed a bullet lodged in his skull, the court held that it was evidence which would likely lead to a different verdict and, so, granted a new trial.

In *Commonwealth v. Bulted, supra,* the defendant was convicted of first-degree murder after his wife's body was found in their home. At trial the Commonwealth painted a picture of a dutiful and exemplary wife whom the defendant had killed for no apparent reason. The defense argued that his wife was seeing a man named Francisco, that the husband had intercepted his wife with Francisco, that there had been a fist fight which had splattered blood on the defendant's shirt. Francisco, it later developed, did exist, was the wife's paramour and did fight with the husband, splattering his shirt with blood. The court found that "the great discretion given to a jury to choose between the various degrees of homicide . . . a second trial would be likely to produce a different result." *Bulted,* 443 Pa. at 429, 279 A.2d at 162. The court suggested that sufficient provocation existed to find voluntary man-

---

**3.** Commonwealth's reliance on *Commonwealth v. Frey,* 512 Pa. 557, 517 A.2d 1265 (1986), *cert. denied,* 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987) is misplaced. In *Frey,* the defendant had testified at his trial and then wanted to offer testimony which contradicted that testimony. The court held that contradictory testimony would not be exculpatory. In the case at hand, Bonaccurso did not testify at his trial and, so, was not open to contradiction. It is demonstrable that had the defense known of the evidence offered by Savasano and others that the trial tactics would have changed.

slaughter. *Id.* In *Mount, supra,* the state Supreme Court found that after-discovered evidence justified a new trial when the after-discovered evidence contradicted an aggravating circumstance, which, while it did not affect the degree of guilt, was in fact the only evidence on which the three-judge panel relied to impose the death penalty rather than life in prison.

When, however, a defendant offered after-discovered evidence of his own instability to mitigate a conviction for first-degree murder, the court found that a new trial was not warranted. *Commonwealth v. Clanton,* 395 Pa. 521, 151 A.2d 88 (1959). Nor did this court grant a defendant a new trial after a conviction for assault and battery when the defendant discovered later that the victim's injuries were less severe than presented at trial. *Commonwealth v. Moskovitz,* 142 Pa.Super. 325, 16 A.2d 317 (1940). The court reasoned the after-discovered evidence did not go to guilt or innocence, did not refute grievous bodily harm, and that the sentence imposed was within the range of that for simple assault in any case.

The after-discovered evidence in this case is exculpatory, *Mount, supra,* and it would likely affect the outcome of the trial. *Cooney, supra; Bulted, supra.* If Bonaccurso and Savasano testify at trial as they did at the PCRA hearing, it would be difficult for the Commonwealth to prove the premeditation and lack of provocation which a conviction for first-degree murder would require. Thus, the after-discovered evidence makes granting Bonaccurso a new trial proper. *Cooney, supra; Bulted, supra;* 42 Pa.C.S. § 9543(a)(2)(vi), *supra.*

Order affirmed.

BECK, J., files a concurring opinion.

KELLY, J., concurs in the result.

BECK, Judge, concurring.

I agree with the majority that the trial court did not abuse its discretion in awarding appellee-defendant a new trial based on after-discovered evidence. Applying the after-discovered evidence test to the evidence upon which defendant based his PCRA petition, the PCRA court properly concluded that the

new witness' testimony (1) was unavailable at the time of trial, (2) did not merely corroborate other defense evidence presented at trial, (3) did not merely impeach the Commonwealth's evidence, and (4) would have affected the outcome if introduced at trial by resulting in defendant's conviction of a lesser degree of homicide. 42 Pa.C.S.A. § 9543(a)(2)(vi); *Commonwealth v. Schuck*, 401 Pa. 222, 229, 164 A.2d 13 (1960), *cert. denied*, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961).

I point out, however, that this case expands the use of after-discovered evidence into virgin territory. In the cases cited by the majority as controlling this case, the after-discovered evidence independently and reliably corroborated the defense theory presented at trial. In *Commonwealth v. Cooney*, 444 Pa. 416, 282 A.2d 29 (1971), a bullet removed from the petitioner's head after his murder trial corroborated his defense that he was injured and the victim was unintentionally killed in a struggle over a gun, and in *Commonwealth v. Bulted*, 443 Pa. 422, 279 A.2d 158 (1971), the testimony of a witness, the wife's paramour, corroborated the defendant's account of the heated marital dispute which lead to his wife's unintended death after they struggled over the gun with which she attempted to shoot defendant. Similarly, in *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978), misfiled social security records corroborated the defendant's alibi defense.

Here, the after-discovered evidence which warrants a new trial is *inconsistent* with the defense theory as presented at trial. At trial, the defense pursued was misidentification: trial counsel challenged the Commonwealth witnesses' identifications of defendant as the person who shot the victim. The after-discovered witness contradicts that theory. Defendant now admits he was the shooter, and relies on the after-discovered witness to show that his actions which caused the victim's death were not premeditated. I am concerned that the ruling in this case makes possible hindsight justice; our decision suggests that the courts will permit a convicted defendant to rethink the theory of his unsuccessful defense and request relief based on a different defense theory which will be supported by a witness unavailable at the time of trial.

I point out that defendants will not likely succeed in obtaining collateral relief based upon such new theories inconsistent with their trial defenses. In this case the evidence supporting the grant of relief is most compelling. The PCRA court made two crucial credibility determinations: that the after-discovered witness' testimony was reliable and that the defendant did not have the opportunity to tell his story to the court at the original trial because of trial counsel's ineffectiveness for presenting a misidentification defense rather than investigating and presenting defendant's known account of the circumstances of the victim's unintended death.[1]

Under these narrow circumstances, the PCRA mandate that the outcome of the first trial was unreliable was satisfied.

---

1. Indeed, trial counsel's zealous impeachment of these witnesses' testimony supported the Supreme Court's conclusion that defendant was not prejudiced by the Commonwealth's failure to disclose the names and identities of these witnesses before trial. *Commonwealth v. Bonacurso,* 500 Pa. 247, 455 A.2d 1175, 1178–79 (1983). The Supreme Court noted, however, that its conclusion on this issue did not "compel a conclusion that defense counsel is not ineffective for failing to take action on the basis of information relating to witnesses of which he is unaware. (citations omitted)." *Id.,* 455 A.2d at 1179 n. 7.