J-A05028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRIS WILLIAMS | : | |
| | : | |
| Appellant | : | No. 251 WDA 2018 |

Appeal from the Judgment of Sentence December 19, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003445-2016

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY SHOGAN, J.: **FILED MAY 24, 2019**

Appellant, Chris Williams, appeals from his judgment of sentence entered on December 19, 2017, in the Court of Common Pleas of Allegheny County. We affirm.

The trial court summarized the factual and procedural history of this case as follows:

On January 30, 2016, [Appellant] was charged with the following offenses for an incident that occurred on January 29, 2016:

• Count One: possession with intent to deliver cocaine (35 P.S. §780-113(a)(30), an ungraded felony)

• Count Two: possession of a controlled substance (cocaine) (35 P.S. §780-113(a)(16), an ungraded misdemeanor)

• Count Three: possession of paraphernalia (35 P.S. §780-113(a)(32), an ungraded misdemeanor)

> • Count Four:  criminal conspiracy (18 Pa.C.S.A. §903, an ungraded felony)
>
> • Count Five:  person not to possess a firearm (18 Pa.C.S.A. §6105(a)(1), a felony of the second degree)

[Appellant] filed a Motion to Suppress on October 3, 2017 challenging the issuance of the search warrant and the arrest of [Appellant].    After a hearing thereon, this [c]ourt denied [Appellant's] Motion to Suppress.  On December 19, 2017, the matter proceeded to a non-jury trial after which [Appellant] was found not guilty at count five, and guilty of the remaining counts. [Appellant] waived his right to a pre-sentence report and was sentenced to serve a total of eleven and a half (11 $^1/_2$) to twenty-three months in the Allegheny County Jail and a concurrent five (5) year period of probation.

[Appellant] timely filed post-sentence motions, which were denied on January 16, 2018.  [Appellant] filed his Notice of Appeal on February 15, 2018. [Appellant] was directed to file his concise statement of matters complained of on appeal via order dated February 23, 2018.

Trial Court Opinion, 6/26/18, at 1-2.  Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents a single issue for our review:  "Whether this Honorable Court committed reversible error by denying [Appellant's] motion to suppress."  Appellant's Brief at 4.  Appellant argues that the affidavit in support of the search warrant obtained in this case did not contain information sufficient to warrant a finding of probable cause within its four corners.  *Id.* at 8.  Appellant further states that he was not named in the search warrant as a target of the investigation, and there are no averments that he engaged in any illegal activity.  *Id.* at 11. As such, Appellant maintains the issuance of the search warrant was in error.  *Id.* at 8.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). Further, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

In *Commonwelth v. Jones*, 988 A.2d 649 (Pa. 2010), our Supreme Court addressed the requirements for a valid search warrant:

> Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. "The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause." *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887, 899 (1991) (quoting *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187, 1191 (1986)). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief

that a search should be conducted." ***Commonwealth v. Thomas***, 448 Pa. 42, 292 A.2d 352, 357 (1972).

In ***Illinois v. Gates***, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In ***Commonwealth v. Gray***, 509 Pa. 476, 503 A.2d 921 (1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in ***Gates***, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

> * * *

> Further, a reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

***Commonwealth v. Torres***, 564 Pa. 86, 764 A.2d 532, 537–38, 540 (2001).

*Id.* at 655. "In determining whether a search warrant is supported by probable cause, appellate review is confined to the four corners of the affidavit." *Commonwealth v. Galvin*, 985 A.2d 783, 796 (Pa. 2009).

In the case before us, the affidavit of probable cause in support of the search warrant provides as follows:

> Your Affiant has 19 years experience with the City of McKeesport Police Dept. and is currently assigned to the narcotics investigation unit since 2004. Your Affiant has been involved in thousands of VCSDDCA arrests stemming from undercover operations and search warrants. Also assisted other agencies such as Pa. State Attorney Generals Ofc. and F.B.I. with wiretap violations. Your Affiant has been trained by the D.E.A., D.A.N.E.T., and the Pa. State in the field of narcotics.
>
> This specific investigation began on or about January 15, 2016 when your Affiant was contacted by a confidential informant who will be referred to as CI throughout this affidavit for fear of retaliation and harm. This CI informed detectives that a black male known as DEAN is selling cocaine from his residence at 3414 Oakland [S]t. in McKeesport Pa, 15132. And that DEAN will inform you to come to his residence or he will walk or drive his maroon [D]odge [D]urango [SUV] and meet your [sic] for the cocaine sale. CI states that DEAN sells $20 to $40 pieces of cocaine packaged in a small plastic baggie and has several plastic baggies on his person for sale at all times.
>
> At this point this Det/Sgt. and Det. SUMMERS set up spot surveillance on 3414 Oakland [S]treet in the City of McKeesport and observed the maroon [D]odge [D]urango parked in front of 3414 Oakland [S]t. and also a black male exiting the residence and driving the [D]urango. This Det/Sgt. recognized the black male as DEAN WILLIAMS from a traffic stop conducted [in] the early month's [sic] of 2015 in which DEAN advised this Det/Sgt. that he was residing at 3414 Oakland [St.] with his brother [Appellant]. Also during the spot surveillance detectives observed short term foot traffic from known drug users and also short vehicle traffic where DEAN would exit the apartment door at 3414 Oakland [S]t. and approach vehicles.

- 5 -

This Det/Sgt. is very famalier [sic] with the male known as DEAN WILLIAMS and ha[d] conversation[s] with [Dean] WILLIAMS in the past year. The McKeesport police Narcotics unit investigated [Dean] WILLIAMS in the past in the McKeesport area and made an arrest and conviction of [Dean] WILLIAMS for possessing cocaine with the intent to deliver.

This Det/Sgt. then retrieved a photograph of [Dean] WILLIAMS from JNET and showed the CI who confirmed the black male photo as [Dean] WILLIAMS who is supplying cocaine from his residence.

Within the past 24 to 48 hours prior to the application of this search warrant th[ese] McKeesport Detectives met this CI who is willing to cooperate with this investigation buy [sic] conducting a controlled buy of cocaine from the male known as DEAN WILLIAMS from his address 3414 Oakland [S]t. McKeesport Pa, 15132. For this buy Detectives will handle the CI who was searched prior to the buy for contraband and money with negative results. The CI contacted the target via cellphone in which [Dean] WILLIAMS advised the CI of a meet location and he will arrive shortly. The CI was given official funds for the purchase and driven to the meet location in a[n] unmarked police vehicle and released and advised where to stand and not to talk to anyone during this controlled buy. The CI was in detectives['] eyesight the entire time and did exactly what was instructed by detectives. Det. SUMMERS conducted [spot] surveillance on 3414 Oakland [S]t. and after the phone call was made by the CI observed [Dean] WILLIAMS exit the front door of 3414 Oakland [S]t. and go directly to the CI meet location and observed by detectives was a hand to hand transaction between [Dean] WILLIAMS and the CI. [Dean] WILLIAMS then immediately left and was followed by Det. SUMMERS directly back to 3414 Oakland [S]t. McKeesport and close[d] the door. The CI was then picked up and gave this Det/Sgt. a quantity of cocaine which was purchased from [Dean] WILLIAMS. The CI was then searched a second time for contraband and money with negative results. The cocaine was field tested by Det. SUMMERS using a narco pouch tester with positive results.

Based on the above facts in this above affidavit and information obtained your Affiant is respectfully requesting that a search warrant be issued for the person of DEAN WILLIAMS B/M D.O.B 11-13-1957 and the residence located at 3414 Oakland [S]t.

McKeesport Pa, 15132. Based on illegal criminal activity of selling cocaine[.]

Affidavit of Probable Cause in support of Application for Search Warrant, 1/28/16, at 1-2.

Reviewing the affidavit on its four corners, we conclude that the issuing authority's determination that there was probable cause to issue the search warrant for 3414 Oakland Street was supported by the record. As set forth above, the affidavit included testimony from a CI that drugs were being sold by Dean Williams out of his residence at 3414 Oakland Street in McKeesport, and often Dean Williams would utilize a maroon Dodge Durango. Based on this information, the detectives conducted surveillance of the residence. The affidavit reflects that during this surveillance, detectives observed a maroon Dodge Durango parked in front of 3414 Oakland Street, and they witnessed Dean Williams, who the detectives knew, exit the residence and drive the Durango. Detectives observed "short term foot traffic from known drug users and also short vehicle traffic where DEAN would exit the apartment door at 3414 Oakland [S]t. and approach vehicles." Affidavit, 1/28/16, at 2.

Furthermore, the detectives arranged and conducted a controlled buy utilizing the CI. During that controlled buy, detectives saw Dean leave 3414 Oakland Street, go directly to meet the CI, engage in a hand-to-hand transaction with the CI, immediately travel back to 3414 Oakland Street, enter the residence, and close the door behind him. Thus, considering the totality of circumstances, the information provided in the affidavit would permit the

issuing authority to make a practical, common-sense decision that there is a fair probability that contraband or evidence of a crime will be found at 3414 Oakland Street. *Jones*, 988 A.2d at 655. Accordingly, the search warrant was supported by probable cause. Thus, the trial court did not err in determining that the search warrant was lawfully issued for 3414 Oakland Street.

Moreover, it was upon execution of the lawfully issued warrant that detectives observed Appellant inside the residence at 3414 Oakland Street packaging crack cocaine. The trial court summarized the related testimony from the suppression hearing as follows:

> It is significant to note that [Appellant] was not the person who was the subject of the search warrant, however, he was observed in the premises on the date the search warrant was executed. Specifically, as detectives prepared to enter the residence to execute the search warrant, they witnessed [Appellant] in the kitchen preparing crack cocaine for sale. Sergeant [Steve] Kondrosky testified that he viewed [Appellant] "manipulating plastic baggies of what was suspected to be crack cocaine on a plate." Further Sergeant Kondrosky stated, "once he was walking away, he had blue rubber gloves on, he took those of[f], and I believe he actually put something in his pocket." At this point, entry of the residence was made, and Detective Sydney Summers encountered [Appellant] walking from the kitchen. She searched his person and recovered a bag of cocaine from his right pocket. She also searched the area in the kitchen where Sergeant Kondrosky observed [Appellant] packaging cocaine and recovered 25 bags of packaged crack cocaine.

Trial Court Opinion, 6/26/18, at 2-3 (internal citations omitted).

Thus, detectives were lawfully present at 3414 Oakland Street when they observed Appellant engaged in illegal activity inside the residence.

- 8 -

Furthermore, cocaine was recovered from Appellant's right pocket. This unlawful activity subjected Appellant to arrest. "Where a search warrant adequately describes the place to be searched and the persons and/or things to be seized the scope of the search 'extends to the entire area in which the object of the search may be found' and properly includes the opening and inspection of containers and other receptacles where the object may be secreted." **Commonwealth v. Caple**, 121 A.3d 511, 521 n.2 (Pa. Super. 2015). Accordingly, it is irrelevant that Appellant was not named in the affidavit of probable cause or warrant as a target of the investigation. The evidence seized from 3414 Oakland Street was properly admitted into evidence against Appellant. The trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2019