Commonwealth *v.* Mount, Appellant.

Argued November 19, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stephen M. Feldman,* with him *Robert E. Lenton,* for appellant.

*Richard A. Sprague,* Assistant District Attorney, with him *John F. Hassett* and *Joseph M. Smith,* Assistant District Attorneys, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

Opinion by Mr. Justice Jones, January 12, 1965:

This is an appeal from a judgment of sentence of death imposed by a three-judge court, composed of three judges of the Court of Oyer and Terminer of Philadelphia County, after a finding by such court that George A. Mount was guilty of murder in the first degree. This appeal challenges the validity of the sentence, not the finding of guilt.

On August 29, 1963, Frances Lieberman—a married woman then nine months pregnant—was found dead in the bedroom of her apartment in Philadelphia. On the left side of the deceased's body were thirteen stab wounds which, in the medical examiner's opinion, caused death within five minutes after infliction. Near the deceased's body was a steak knife—admittedly, the murder weapon—which matched four other knives found in a drawer in the deceased's kitchen. On the kitchen drainboard was found a Timex wrist watch and bloodstains were found on the inside of the watch band.

George A. Mount, apprehended by the police, four days subsequent to the homicide, made a statement to the police. In this statement, Mount stated: he had approached the building wherein deceased's apartment was located and, upon finding a door therein unlocked, had entered the building, descended the stairs and, then noticing a door ajar in deceased's apartment, he entered that apartment; while walking around the apartment, he noticed the deceased lying in bed; he then tiptoed into the kitchen, took a steak knife out of one of the kitchen drawers and started to look for money; while so doing, he bumped a chair and then heard a voice, whereupon he entered deceased's bedroom and saw her sitting up in bed; when the deceased started to scream, he lunged at her, struggled with her and stabbed her in the chest; he then went into the kitchen to wash the blood from his hands and, in so

doing, left his wrist watch on the drainboard; after looking around, he found and took some money from a purse in the living room; recalling that he had left the knife in the deceased's body, he re-entered the bedroom, removed the knife from deceased's chest, wiped it off and left it on the bedroom floor; he then left the apartment but, recalling that he had left his watch in the kitchen, he returned to but did not re-enter the apartment. In this original statement, Mount claimed that he took the knife simply to scare the deceased and that he stabbed her only because he became "panicky" when she screamed.

Four days later, Mount made another statement to the police wherein he related an attempt he had made to sexually assault the deceased as she lay dead.[1] In this additional statement, Mount stated that after he "had stabbed the woman [he] had got up, went into the living room and took off [his] clothes and was going to have sexual intercourse with the woman"; that he "went back to where she was lying and got down on [his] knees, picked her legs up and then [he] dropped them again, [he] could not go through with it, so [he] went back into the living room, put on [his] shorts, then went and washed [his] hands, came back and got dressed." Mount denied that he had penetrated deceased's body and stated that he had stopped his actions prior to such penetration.

Represented by counsel, Mount entered a plea of guilty to murder generally. After a hearing, the three-judge court unanimously found him guilty of murder in the first degree.[2] Upon finding Mount guilty of murder in the first degree, the court then proceeded

---

[1] At first, Mount had denied making any such attempt. Later, upon confrontation of Mount by the police with certain information obtained from findings in the criminal laboratory, he made this additional statement.

[2] The propriety and validity of this finding is *not* challenged.

to receive additional evidence upon the question of the penalty to be imposed[3] and, after such hearing, the court unanimously determined the appropriate penalty to be death by electrocution and imposed such sentence on Mount.

This appeal presents several questions: (a) whether, in the imposition of the death penalty, the court relied upon findings unsupported by evidence of record and, in so doing, abused its discretion and committed an error of law; (b) whether certain evidence offered by Mount in mitigation of the sentence to be imposed was erroneously excluded; (c) whether, in imposing the death penalty, the court considered all the relevant factors.

The thrust of Mount's first contention is based upon several statements which appear in the memorandum opinion filed by the court below.[4] In the course of that opinion, the court said: "Defendant also committed a rape upon this woman," and "[t]he evidence leaves no doubt that this defendant, either prior to his entry or certainly while in the victim's apartment, conceived the vicious and calculated plan and intent to perpetrate rape and with a further design to kill when he found this necessary to carry out his purpose." Mount urges that no evidence of record supports such statements.

It is true that Mount's additional statement, if believed, while clearly indicative of an intent on his part to have sexual relations with the deceased, would reveal that he did not carry out his intent and that he did not actually commit rape upon the deceased. How-

---

[3] Under the provisions of the so-called "Split Verdict Act" of December 1, 1959, P. L. 1621, 18 P.S. §4701.

[4] In *Commonwealth v. Garramone*, 307 Pa. 507, 161 A. 733, we said (p. 514): ". . . the judge who hears the evidence on a plea of guilty, should at least make and file a brief memorandum which will reveal the reasons for the sentence imposed." See also: Pa. Supreme Ct. Rule 58.

ever, a court is not bound to believe all that which is contained in the statement of an accused (*Commonwealth v. Melton*, 406 Pa. 343, 351, 352, 178 A. 2d 728) and, Mount having been found guilty of murder in the first degree, this Court is under the duty to view the evidence in the light most favorable to the Commonwealth. The fact that Mount states he did not penetrate the body of the deceased and did not carry out his intent does not negate a finding on the basis of other evidence that he did so.

According to the medical examiner and the findings of the police laboratory, there was no evidence of any injury to the private parts of deceased. However, a vaginal smear revealed the presence in deceased's private parts of acid phosphatase which is found only in the secretion and the prostate of a male human and which indicated that within a period of seven to ten days prior to her death someone had had sexual intercourse with deceased. Moreover, on the inside of Mount's shorts were bloodstains of the same type blood of deceased as well as seminal fluid. While the medical examiner did make tests to determine whether sperm cells were present in deceased's private parts, such tests proved nothing since they were "not satisfactory for adequate interpretation". There were bloodstains on the back of deceased's knees indicating her legs had been lifted and spread. Our independent review of this record indicates that the evidence and *all* the circumstances surrounding this homicide were such as justified the court below in concluding that not only did Mount harbor the intent to have sexual intercourse with deceased but that he carried into action such intent. *Commonwealth v. Cater*, 396 Pa. 172, 152 A. 2d 259, relied upon by Mount in this respect, is clearly inapposite to the case at bar. We find nothing in the conclusions reached by the court below which would indicate either an abuse of discretion or the commission of an error of law.

Mount next urges that the court below excluded from evidence certain testimony relevant on the issue of the sentence to be imposed in that it tended to show the type of person Mount had been prior to the commission of this crime. Our examination of the record indicates that the court below extended great latitude to counsel for Mount in developing Mount's personality, behavior, past history and conduct and that the court committed no error in the exclusion of the evidence offered.

Lastly, Mount contends that the court did not consider *all* the factors necessary to be considered before imposition of the death penalty. The record rebuts this contention. The court below did enter into a full and exhaustive inquiry into both the criminal act and Mount himself and we are satisfied that, before imposing the death penalty, the court carefully and solemnly considered *all* the necessary factors.

The instant record presents a sordid and revolting homicide. The imposition of the death penalty was made only after a hearing at which Mount's counsel was given full opportunity to show all facts relevant to the type of person Mount was and after a consideration of all the facts surrounding the commission of this homicide. We find no error on the part of the court in the imposition of this sentence.

Judgment of sentence affirmed.

Mr. Justice COHEN dissents.