Commonwealth *v.* Mount, Appellant.

Submitted April 21, 1969.  Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Stephen M. Feldman* and *Robert E. Lenton,* for appellant.

*Edward G. Rendell* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, October 9, 1969:

Appellant was indicted for the murder of one Frances Lieberman on August 29, 1963.[1]  After he pleaded guilty to murder generally, a three-judge panel was convened under local Philadelphia practice to hear testimony on the degree of guilt.  Upon hearing all the evidence, the panel determined that appellant had raped his victim in addition to killing her and fixed the penalty at death in the electric chair.  This Court

---

[1] For a more complete summary of the substantive facts surrounding this crime, see our opinion affirming the conviction on direct appeal. *Commonwealth v. Mount,* 416 Pa. 343, 205 A. 2d 924 (1965), *cert. denied,* 381 U.S. 954 (1965).

upheld the conviction against appellant's charge that there was insufficient evidence to prove that a rape had been committed. *Commonwealth v. Mount,* 416 Pa. 343, 205 A. 2d 924, *cert. denied,* 381 U.S. 954 (1965). Subsequently, we also denied appellant's petition for habeas corpus. *Commonwealth ex rel. Mount v. Rundle,* 425 Pa. 312, 228 A. 2d 640, *cert. denied,* 389 U.S. 875 (1967). Appellant then filed the present petition under the Post Conviction Hearing Act.

Appellant's principal contention concerns the testimony of one Agnes Mallatratt. Miss Mallatratt was employed by the Philadelphia Police Department as a laboratory technician specializing in blood and other body fluid stains. After she had testified in many cases, it was discovered in 1965 that she had lied about her professional qualifications in that, in reality, she had never fulfilled the educational requirements for a laboratory technician. Miss Mallatratt testified at appellant's sentencing hearing that she found seminal stains and bloodstains matching the deceased's blood type on a pair of underpants found among the appellant's belongings at the time of his apprehension. Appellant alleged in his PCHA petition that the subsequent revelation that Miss Mallatratt had perjured herself requires that her testimony be disregarded. Appellant further contends that without Miss Mallatratt's testimony there is insufficient evidence upon which to find that a rape had been committed and that, therefore, he is entitled to be resentenced.[2] The court below

[2] In his petition appellant asks that we remand the case for an evidentiary hearing as outlined in Section 9 of the Post Conviction Hearing Act (Act of Jan. 25, 1966, P. L. (1965) 1580, §9, 19 P.S. §1180-9 (pp)). No purpose would be served in remanding this case for a hearing since there are no factual issues in dispute. It is undisputed that Miss Mallatratt perjured herself concerning her qualifications, and, therefore, the only issue in this case is the legal effect of that perjury. Section 9 states that "If

(per WEINROTT, J.) denied the petition without a hearing.[3]

This is the second case which has come before this Court involving testimony by Miss Mallatratt. In *Commonwealth v. Alston*, 430 Pa. 471, 243 A. 2d 404 (1968), we held that the rules governing after-discovered evidence would apply to cases tried before it was revealed that Miss Mallatratt had perjured herself. In *Commonwealth v. Schuck*, 401 Pa. 222, 164 A. 2d 13 (1960), *cert. denied*, 368 U.S. 884 (1961), we outlined the circumstances which would justify the grant of a new trial because of after-discovered evidence as follows: "In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, *must not be cumulative* or merely impeach credibility, and *must be such as would likely compel a different result*: [citing authorities]." (Emphasis added) (401 Pa. at 229)

The Commonwealth's initial argument is that since Miss Mallatratt did not testify concerning her qualifications at appellant's sentencing hearing,[4] the only

---

a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing . . . ." The question we must answer is whether the undisputed facts in this case would entitle the appellant to relief. In such a situation an evidentiary hearing is not necessary.

[3] In his opinion denying appellant's PCHA petition, Judge WEINROTT held that appellant had waived all defects in the sentencing procedures through his various other attempts at post-conviction relief. We cannot ascribe to the view that appellant has waived any defect concerning Miss Mallatratt's testimony since it was not discovered for some two years after appellant's sentencing hearing that she had perjured herself concerning her qualifications.

[4] "Mr. Sprague: Are her qualifications agreed to, gentlemen? Mr. Feldman: I don't honestly know what her qualifications are.

after-discovered evidence was the fact that Miss Malla-
tratt had perjured herself *in other trials.* This infor-
mation would go solely to the issue of her credibility
as a witness at appellant's hearing, and, under the
*Schuck* test, this alone would not entitle appellant to
relief. The Commonwealth's argument, however, ig-
nores the most crucial factor. What is important is
not whether Miss Mallatratt testified as to her creden-
tials at appellant's hearing but whether the three-judge
panel looked upon her as an expert witness. From the
colloquy at the hearing, there can be no doubt that
the three-judge panel considered Miss Mallatratt an
expert based on the previous occasions on which she
had testified.[5] Regardless of what she might have said
concerning her educational background at appellant's
hearing, the panel assumed that she had the requisite
qualifications of a laboratory technician. Therefore,
we must reject the Commonwealth's argument. The
crucial question then becomes whether Miss Malla-
tratt's testimony was merely cumulative and, if not,
whether discounting her testimony would likely com-
pel a different sentence.

The Commonwealth's evidence of rape consisted of
the following testimony: first, a police officer testified

---

Q. Will you tell the Court what your duties are, how long you
have been at it, and the number of examinations you have made?
A. Employed by the Police Chemistry Laboratory for six and a
half years. My specific duties are to examine blood stains and
analyze blood stains, to examine other body fluids, to examine
clothing and other articles for paint particles and hairs and
fibers. Q. How many examinations have you made in the course
of your official duties, approximately? A. I'd say about 5,000."

[5] "Mr. Feldman: If Your Honor please, if we could have an
idea, is she merely going to testify as to blood type? Judge Wein-
rott: I don't know. Mr. Feldman: If we could have an offer of
proof—Mr. Sprague: I am ready to proceed. Judge Weinrott:
*Mrs. Mallatratt's so well known."* (Emphasis added)

that when the body of the deceased, who was nine months pregnant at the time, was discovered, she was found lying on her back on the floor with her nightgown pulled above her vagina. Bloodstains were found underneath the victim's knees. Second, the medical examiner testified that he found acid phosphatase in the vagina of the deceased. This evidence indicates that the deceased had had intercourse some time within the preceding seven to ten days. A vaginal smear was also prepared to determine whether sperm was present, but the test was technically defective, so that the doctor was unable to testify whether sperm was present in the deceased's vagina. Third, the appellant confessed that, after stabbing the victim, he decided that he would rape her. He removed his clothes and lifted up the deceased's nightgown, but then decided that he could not continue and got dressed and left the apartment. The final evidence was Miss Mallatratt's testimony. A pair of underpants was discovered in the abandoned automobile in which the appellant was found sleeping several days after the crime. Miss Mallatratt testified that on the inside of the underpants she found both seminal stains and bloodstains of type "O", which was the deceased's blood type. There is little doubt that this latter testimony was crucial to the panel's finding that appellant had raped the deceased. In his opinion, Judge WEINROTT said, "Defendant also committed a rape upon this woman. His undershorts revealed the presence of seminal fluid and blood which matched that of the deceased . . . ."

Upon reviewing the record, we have reached the conclusion that Miss Mallatratt's testimony was not merely cumulative and that, discounting her testimony, there was insufficient evidence to prove a rape. The condition in which the body was found is consistent with the appellant's confession that he decided to rape the

victim but then changed his mind. We cannot conclude from the fact that appellant confessed that he harbored plans to rape the deceased that this was the least that he did and that he probably did much more. There is no evidence to contradict the appellant's version of what transpired. The medical examiner's examination was inconclusive since we cannot assume that the deceased, although she was nine months pregnant, did not have intercourse with her husband in the period of seven to ten days preceding the murder. The most damaging evidence was Miss Mallatratt's testimony which would indicate that not only had the appellant undressed but that, in all probability, he had ejaculated as well. In short, without Miss Mallatratt's testimony, there is insufficient evidence to prove that the appellant did rape the deceased.[6]

In the instant record posture Miss Mallatratt's qualifications *as a laboratory technician* were accepted by both court and counsel without question. The fact that Miss Mallatratt was not actually accredited as a laboratory technician was not discovered until after appellant's trial and during the trial of another case involving another defendant. The inherent difficulty in this case is that the court below *assumed* Miss Mallatratt's qualifications by reason of her previous frequent court appearances as a witness and, acting upon this assumption, without inquiry, placed considerable weight on her testimony. Even though Miss Mallatratt lacked the necessary theoretical and academic background for accreditation as a laboratory technician, it may well be that the practical experience

---

[6] At the time of our opinion in *Commonwealth v. Mount*, 416 Pa. 343, 205 A. 2d 924 (1965), wherein we concluded there was sufficient evidence of rape, the qualifications of Miss Mallatratt had not been discredited and full weight was given to her testimony.

gained over a long period of years in laboratory work did qualify her to make proper and sound laboratory findings. However, the record in the court below presents no evidence of inquiry in this area.

The court below should have the opportunity to evaluate the qualifications of Miss Mallatratt in the light of her lack of theoretical background sufficient to credit her as a laboratory technician and to evaluate her long experience working in a laboratory to determine whether she is qualified to testify as to laboratory tests and laboratory findings. Such inquiry is mandated in order that the court below might determine the weight, if any, to be given to her testimony upon which the Commonwealth relied, in large measure, for proof of the occurrence of rape.

The Commonwealth's final argument is that, in addition to the charged felony of rape, there was sufficient evidence to justify a finding of felony murder on the ground that the appellant committed robbery, broke into the apartment and stole money from deceased's handbag. Assuming that there was sufficient evidence to prove the commission of a robbery, nevertheless, we cannot conclude on the status of this record that the court below in sentencing Mount to death did so upon that ground. An examination of the opinion of the three-judge panel indicates that the judges emphasized the heinous character of this particular rape and predicated their sentence on the rape feature of the crime.[7] Under such circumstances, since the

---

[7] In his opinion for the panel, Judge WEINROTT wrote, "The evidence leaves no doubt that this defendant, either prior to his entry or certainly while in the victim's apartment, conceived the vicious and calculated plan and intent to perpetrate rape and with a further design to kill when he found this necessary to carry out his purpose . . . . After again reviewing the entire record in this case, we reaffirm our belief that the facts set forth

428

sufficiency of the evidence as to rape hinged upon the testimony of Miss Mallatratt and since the court below was not aware of the lack of accreditation of Miss Mallatratt as a laboratory technician, we must remand this matter to the court below to inquire into Miss Mallatratt's qualifications and then to determine what, if any, weight should be given to her testimony.

Judgment of sentence vacated and the record remanded to the court below for a hearing consistent with the views expressed in this opinion and for a determination, after such hearing, of the appropriate sentence.

Mr. Chief Justice BELL dissents.

an atrocious and sadistic type of killing in answer to which there has been no valid alleviating factors . . . . We were convinced that the defendant who committed this crime was depraved; that he was dangerous to society and manifested the mental state of a savage, depraved and brutal person for whom there was but one proper sentence. Accordingly, we were constrained to impose the death penalty."