J-S04012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARCUS M. WALTON | : | |
| | : | |
| Appellant | : | No. 3657 EDA 2018 |

Appeal from the PCRA Order Entered November 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): Cp-51-CR-0334691-1989

BEFORE:  BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 27, 2020**

Appellant, Marcus M. Walton, appeals *pro se* from the order dismissing his untimely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  After careful review, we affirm.

During Appellant's direct appeal from his judgment of sentence, this Court provided a brief summary of the facts underlying Appellant's conviction as follows:

> On February 9, 1989, [A]ppellant entered the residence at 647 North 52nd Street in Philadelphia.  Upon entering, [he] went to the second floor of the residence where he engaged in a conversation with Mark Bryant.  Appellant spoke with Bryant briefly and told him to go into the bathroom.  Appellant told the other people present on the premises to go into their rooms, and then went into the bathroom with Bryant.  Approximately five minutes later a shot was heard.  Appellant was then seen exiting the bathroom with a gun at his hip.  He ran down the steps and fled through the first floor rear door into his white BMW.  Immediately thereafter, Bryant was found on the floor of the bathroom with a fatal bullet wound to the back of his head.

*Commonwealth v. Walton*, No. 2998 Philadelphia 1990, unpublished memorandum at 1 (Pa. Super. July 10, 1992). Further, in our review of Appellant's appeal from the denial of his second PCRA petition, we noted that: "At trial, several witnesses, including David Munlyn, Christine Nelson, and Loretta Nelson, who were present during the incident, attested to [Appellant]'s involvement in the shooting." *Commonwealth v. Walton*, No. 3363 EDA 2001, unpublished memorandum at 2 (Pa. Super. Dec. 5, 2002).

The PCRA court provided the following procedural history of this case:

[Appellant] was arrested and subsequently charged in connection with the 1989 fatal shooting of Mark Bryant in his home. On March 6, 1990, following a jury trial presided over by the Honorable William J. Manfredi, [Appellant] was convicted of first-degree murder and possessing an instrument of crime. On October 22, 1990, the trial court sentenced [Appellant] to an aggregate term of life imprisonment. Following a direct appeal, the Superior Court affirmed the judgment of sentence on July 10, 1992, and the Pennsylvania Supreme Court denied [Appellant]'s petition for allowance of appeal on December 8, 1992.[2]

   [2] *Commonwealth v. Walton*, 616 A.2d 721 (Pa. Super. 1992), *appeal denied*, 618 A.2d 401 (Pa. 1992).

[Appellant] filed his first PCRA petition on January 2, 1997, which the PCRA court subsequently denied after conducting an evidentiary hearing on September 22, 1998. The Superior Court affirmed the order denying relief on September 19, 2000.[3]

   [3] *Commonwealth v. Walton*, 766 A.2d 893 (Pa. Super. 2000) (table).

[Appellant] was subsequently unsuccessful in obtaining collateral relief through serial petitions filed between 2000 and 2014.

On February 7, 2017, [Appellant] filed the instant *pro se* PCRA petition. [Appellant] filed supplemental petitions [that] were reviewed jointly with his initial petition. Pursuant to Pennsylvania Rule of Criminal Procedure 907, [Appellant] was served notice of

the PCRA court's intention to dismiss his petition on August 13, 2018. [Appellant] submitted a response to the Rule 907 notice on September 10, 2018. On November 20, 2018, the PCRA court dismissed his petition as untimely without exception. On December 11, 2018, [a timely, *pro se*] notice of appeal was timely filed to the Superior Court.

PCRA Court Opinion ("PCO"), 3/29/19, at 1-2.

The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant did not file one. The trial court issued its Rule 1925(a) opinion on March 29, 2019.

Appellant now presents the following questions for our review, *verbatim*:

I. WHETHER APPELLANT SUFFERED FROM A FRUIT OF THE POISONOUS TREE, IN THAT, DETECTIVE MANUEL SANTIAGO FASLEY TESTIFIED AND OFFERED "TESTIMONIAL EVIDENCE" DERIVING FROM A JUVENILE WITNESS POLICE STATEMENT GIVEN WITHOUT PARENTAL CONSENT AND FURTHER RECONSTRUCTED THE EVIDENCE TO IMPLICATE THE DEFENDANT WHEN THE JUVENILE'S POLICE STATEMENT NAMED SOMEONE ELSE?

II. WHETHER THE PCRA COURT COMMITTED A LEGAL ERROR WHEN RECOGNIZING THE APPELLANT SUFFERED A ***BRADY***[1] VIOLATION, BUT IGNORED TO ISSUE MEANINGFUL PCRA REVIEW ON THE PREMISE, THAT THE APPELLANT FAILED TO EXPRESS REASONABLE DUE DILIGENCE ALTHOUGH THE RULE ON DILIGENCE HAS CHANGED IN THIS AREA OF THE LAW?

III. WHETHER APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS WERE VIOLATED UNDER PENNSYLVANIA CONSTITUTION ARTICLE I § 9, AND THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHEN THE PCRA COURT COMMITTED LEGAL ERROR OR AN OBSTRUCTION OF JUSTICE VIA IGNORING THE AFTER DISCOVERED FACTS EXCEPTIONS UNDER 42 PA C.S. § 9545(b)(1)(ii) AND § 9545(b)(2), PERTAINING TO PCRA COUNSEL'S MENTAL ILLNESSES?

---

[1] ***Brady v. Maryland***, 373 U.S. 83 (1963).

IV. WHETHER PCRA COUNSEL'S MENTAL ILLNESSES AIDED IN HIS INEFFECTIVE ASSISTANCE OF COUNSEL PER-SE WHEN WAVING AND FAILING TO ADDRESS APPELLANT'S REMAINING PCRA CLAIMS WHICH WERE PROPERLY RAISED AND PRESERVED FOR MEANINGFUL REVIEW IN AN "INITIAL TIMELY FILED PCRA PETITION"?

V. WHETHER THE CUMULATIVE ERRORS IN ITS TOTALITY CAUSED A PREJUDICIAL EFFECT AND DENIED APPELLANT RIGHTS TO A FAIR AND IMPARTIAL TRIAL PROCEEDINGS?

Appellant's Brief at 3.

This Court's standard of review regarding an order denying a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA's time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this

Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[2]

Appellant's PCRA petition is patently untimely. Thus, he must successfully plead and prove a timeliness exception to enable this Court to review his claims. Appellant twice invokes the newly-discovered fact exception set forth in Section 9545(b)(1)(ii), which apply to his first and second, and third and fourth issues, respectively.

This exception requires that the facts upon which such a claim is predicated must not have been known to [the] appellant, nor could they have been ascertained by due diligence. [T]o fall within this exception, the factual predicate of the claim must not be of public record and must not be facts that were previously known but are now presented through a newly discovered source.

*Commonwealth v. Chmiel*, 173 A.3d 617, 625 (Pa. 2017) (cleaned up).

_____

[2] When Appellant's current PCRA petition was filed, Section 9545(b)(2) required PCRA petitions invoking a timeliness exception to be filed within 60 days of the date the claim could have been first presented. Appellant filed the instant petition on April 17, 2019, whereas the amendment increasing the look-back period set forth in Section 9545(b)(2) did not take effect until December 17, 2017. Therefore, Appellant's petition is subject to the 60-day limitation under the pre-amended version of the statute.

**I & II**

The first piece of newly-discovered evidence alleged by Appellant concerns an article in Rolling Stone Magazine discussing accusations of corrupt conduct, by former Detective Manuel Santiago ("Santiago") of the Philadelphia Police Department, in an unrelated case. *See* Paul Solotaroff, *Finally Free: Inside Tony Wright's Murder Exoneration*, Rolling Stone, August 29, 2016.[3] Santiago testified at Appellant's trial.

According to Appellant, his discovery of Santiago's pattern of misconduct,[4] which he first learned about in the Rolling Stone article, led him to further scrutinize Santiago's testimony at his own trial. Santiago testified, *inter alia*, that Appellant was seen by a witness fleeing the scene of the crime in a distinctive white BMW, which was the same make and model of the vehicle owned by Appellant at the time (hereinafter "Santiago's statement"). N.T., 2/27/90, at 102. However, Appellant avers that a statement given to Santiago by a juvenile, E.B., indicated that the person who fled the scene and left in a white car was someone other than Appellant. *See* Appellant's Brief, Exhibit

_____

[3]     https://www.rollingstone.com/culture/culture-news/finally-free-inside-tony-wrights-murder-exoneration-250694/

[4] In the article, the author states that Santiago and another Philadelphia Police detective are "alleged" to have "long histories of coercion and misconduct[.]" *Id.* With regard to the case of Tony Wright, Santiago is accused of coercing Wright into falsely confessing to the rape and murder of a woman. *Id.* After-discovered DNA evidence pointed to another culprit, and Wright's conviction was overturned in 2014, twenty-one years after he was initially convicted. *Id.* The Commonwealth decided to retry Wright, but he was quickly acquitted by a jury. *Id.*

B. Appellant alleges that Santiago intentionally misconstrued E.B.'s statement in order to prejudice him before the jury, which he believes was particularly prejudicial to him at trial, because the Commonwealth never produced a witness who specifically testified to observing Appellant flee in a white BMW.

The PCRA court found that the Rolling Stone article did not satisfy the newly-discovered evidence exception, **see** PCO at 4, relying solely on our Supreme Court's statement in **Commonwealth v. Castro**, 93 A.3d 818 (Pa. 2014), that "allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation." **Castro**, 93 A.3d 825. The **Castro** Court further remarked that "this Court and the Commonwealth and Superior Courts have held newspaper articles generally do not constitute evidence, as they contain inadmissible hearsay." **Id.** at 825 n.11. Based on **Castro**, the PCRA court determined that "the article [Appellant] presented was not newly-discovered evidence." PCO at 5. We agree with the PCRA court that Rolling Stone article alone, and the allegations contained therein, do not constitute newly-discovered facts; they are merely allegations. **See Castro**. In any event, nothing in the article directly pertains to Santiago's conduct in Appellant's case.

However, our inquiry does not end there. The PCRA court failed to discuss Appellant's further contention that the article ostensibly prompted his discovery of more specific evidence of Santiago's wrongdoing in Appellant's case. In his *pro se* brief, Appellant presents the novel claim that the Rolling Stone article led him to further scrutinize the record regarding Santiago's

testimony and, in particular, its relationship to E.B.'s statement. He contends the discovery of the suspicious nature of Santiago's testimony in light of E.B.'s statement was a newly-discovered fact triggered by his discovery of the Rolling Stone article.

There are several problems with this argument. Santiago's in-court testimony at Appellant's trial was plainly not a newly-discovered fact when Appellant filed the instant petition, nor is Appellant's skepticism of that statement. When Santiago testified that Appellant was seen fleeing the scene of the crime in a white BMW (while describing photos of Appellant's vehicle), Appellant's trial counsel immediately objected and requested a mistrial. N.T., 2/27/90, at 102-03. The prosecutor averred that he would proffer a witness to testify to that fact. *Id.* at 103. The trial court cautioned the prosecutor, and advised Appellant's counsel that he could renew his request for a mistrial should the Commonwealth fail to produce that witness to substantiate Santiago's statement. *Id.* at 104. The jury was then instructed "in the strongest terms possible to disregard" Santiago's statement. *Id.*; *see also id.* at 105-06 (instructing the jury to disregard Santiago's testimony regarding Appellant's connection to the specific white BMW). Ultimately, the Commonwealth did not provide a witness who could substantiate Santiago's

statement that a witness had specifically observed Appellant fleeing the scene in a white BMW.[5]

Not only did Appellant object at the time of trial to the problematic testimony by Santiago, he raised the matter several times on prior occasions under alternative legal theories. Appellant raised the court's error in failing to grant a mistrial based on Santiago's statement during his direct appeal in his Rule 1925(b) statement. *See* Appellant's Pa.R.A.P. 1925(b), 11/7/90, at 2 ¶ 8. The trial court addressed the matter as follows:

> A detective testified that a white, four-door[] BMW … registered to [Appellant], with the inscription "King of All Kings" written on the side, was the vehicle in which [Appellant] left the scene of the shooting. We sustained [Appellant's] objection, ordered the testimony stricken[,] and gave the jury a specific instruction to disregard the testimony[;] said instruction even included an explanation as to why the Detective was not competent to give the stricken testimony. However, we denied [Appellant]'s motion for a mistrial.
>
> Subsequently, the Commonwealth presented testimony that a white car was seen leaving the back of the home on the night of the incident…[,] and that [Appellant] was driving a white car with tinted windows and an unknown saying written on the side…. In light of this subsequent testimony and our prompt and complete curative instruction, we are satisfied that any error was harmless

_____

[5] To be clear, Appellant's alleged flight from the scene in a white BMW was not the only evidence, nor the most damning evidence, leading to his conviction (indeed, it was not evidence at all, as the jury was instructed to disregard Santiago's statement to that effect). Various witnesses identified Appellant in the building with the victim, testified to his possession of a gun near the time of the killing, that Appellant owned the vehicle in question, and that a white car was seen leaving the scene after the shooting. What was missing to substantiate Santiago's statement was a witness who specifically observed Appellant fleeing in the white BMW that he owned.

beyond a reasonable doubt and that it would have been inappropriate to declare a mistrial.

Trial Court Opinion, 9/23/91, at 7.

The issue was then abandoned by Appellant's counsel on direct appeal, and Appellant raised direct-appeal counsel's ineffectiveness for that omission in his first PCRA petition. *See* Appellant's *pro se* PCRA petition, 1/8/97, at 17 ¶ 7. The issue was also presented as a failure-to-object-to-prosecutorial-misconduct ineffectiveness claim in a counseled, supplemental PCRA petition. *See* Appellant's supplemental PCRA petition, 10/20/99, at 5-6 (wherein first PCRA counsel argued direct-appeal counsel's ineffectiveness for failing to raise, *inter alia*, prosecutorial misconduct related to Santiago's statement). However, those ineffectiveness claims were also abandoned on direct appeal from the denial of Appellant's first PCRA petition. As a result, those matters were not addressed by this Court in that appeal. *See Commonwealth v. Walton*, 766 A.2d 893 (Pa. Super. Sept. 19, 2000) (unpublished memorandum).

In Appellant's next PCRA petition, his second, he raised only a claim of after-discovered evidence; he did not assert his prior PCRA counsel's ineffectiveness for failing to seek relief under any theory related to Santiago's problematic testimony. However, Appellant was still represented by the same attorney during the litigation of his second PCRA petition. We affirmed the denial of that petition on December 5, 2002, and our Supreme Court subsequently affirmed. *Commonwealth v. Walton*, 817 A.2d 1186 (Pa.

Super. 2002) (unpublished memorandum), *appeal denied*, 825 A.3d 638 (Pa. 2003).

Appellant filed a *pro se* PCRA petition, his third, while his second was still under review. The PCRA court denied it for that reason.[6] In that petition, Appellant had sought to remove his PCRA attorney. Appellant subsequently filed another *pro se* PCRA petition, his fourth, on June 17, 2004. Therein, he raised numerous issues, including a claim that Santiago's statement constituted a **Crawford**[7] violation, and sought to overcome the PCRA's timeliness requirements by asserting **Crawford** as a new constitutional right.

We rejected that claim because, first, Appellant's fourth petition was not filed within 60 days of the date **Crawford** was decided. **Commonwealth v. Walton**, No. 2166 EDA 2005, unpublished memorandum at 7 (Pa. Super. filed May 15, 2006). Second, we recognized that, in any event, **Crawford** did not apply retroactively on collateral review. **Id.** at 6. Thus, Appellant's fourth petition, in which he sought to raise, *inter alia*, issues regarding the admission of Santiago's statement at trial, was time-barred.

In his fifth petition, Appellant presented numerous claims asserting, *inter alia*, the ineffectiveness of his trial, direct appeal, and PCRA counsel for

---

[6] **See Commonwealth v. Lark**, 746 A.2d 585, 588 (Pa. 2000) (holding that "when an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review").

[7] **Crawford v. Washington**, 541 U.S. 36 (2004).

their failures to pursue various legal claims, *none of which involved the failure to preserve claims related to Santiago's problematic testimony*. The PCRA court denied the petition as untimely, and we affirmed. **See Commonwealth v. Walton**, 988 A.2d 732 (Pa. Super. 2009) (unpublished memorandum). In his sixth PCRA petition, filed in 2012, Appellant did not raise any claims related to Santiago's statement. We affirmed the denial of that petition as untimely. **See Commonwealth v. Walton**, 105 A.3d 792 (Pa. Super. 2014) (unpublished memorandum).

Appellant now attempts to resurrect an issue regarding Santiago's testimony under the rubric of newly discovered evidence. He believes that Santiago deliberately misquoted E.B.'s statement to police at Appellant's trial, a suspicion that ostensibly arises out of his discovery of allegations of Santiago's corruption in unrelated cases through the Rolling Stone article. Appellant believes this "new evidence" substantiates several previously-raised, yet ultimately-abandoned legal theories under which Appellant has sought to demonstrate the inadmissibility and prejudicial impact of Santiago's statement.

We are still unconvinced that Appellant has met his burden to demonstrate the applicability of the newly-discovered evidence exception beyond the mere allegations contained in the Rolling Stone article. At best, Appellant has constructed a new theory by which to challenge Santiago's statement and its impact on Appellant's trial. He contends that the new evidence is not "of the same character" as what previously was used to

challenge Santiago's statement, citing for support ***Commonwealth v. Mount***, 257 A.2d 578 (Pa. 1969), and ***Commonwealth v. Small***, 189 A.3d 961 (Pa. 2018). Appellant's Brief at 29. However, we conclude both cases are distinguishable from the instant matter.

In ***Mount***, the defendant pled guilty to murder generally, leaving only the question of his degree of guilt. ***Mount***, 257 A.2d at 579. The sentencing court considered his rape of the victim as an aggravating factor in deciding to sentence him to death for first-degree murder. ***Id.*** New evidence emerged that a laboratory technician, who testified at Mount's trial "that she found seminal stains and blood stains matching the deceased's blood type on a pair of underpants found among the appellant's belongings at the time of his apprehension[,]" "had never fulfilled the educational requirements for a laboratory technician." ***Id.*** at 579–80. The ***Mount*** Court concluded that the technician's "testimony was not merely cumulative and that, discounting her testimony, there was insufficient evidence to prove a rape." ***Id.*** at 581. On that basis, the Supreme Court vacated Mount's death sentence and remanded for resentencing with the direction for the sentencing court to reassess the technician's credibility in light of the new information, and to craft a new sentence after that reassessment. ***Id.*** at 582.

In Appellant's case, Santiago's statement was not admitted into evidence, and the jury was specifically instructed to disregard it. In ***Mount***, by contrast, the technician's testimony had not been previously challenged on any basis, and had been given considerable weight by the court that had

- 13 -

sentenced Mount to death. Furthermore, there was no question in **Mount** that the new fact was credible—that the technician lacked the technical qualifications for her position. Here, Appellant presents only bald accusations from the Rolling Stone article, in addition to Santiago's testimony and E.B.'s statement, neither of which are newly-discovered.[8]

In **Small**, the defendant was convicted of first-degree murder. **Small**, 189 A.3d at 967. In that case, there were no eyewitnesses to the fatal shooting, but Small was observed walking out of a nightclub with the victim not long before the murder occurred. **Id.** at 963. That evidence, in addition to testimony that Small had admitted to the killing of two other inmates when he was incarcerated, and circumstantial evidence that demonstrated his motive, supported his conviction. **Id.** at 963-66. However, some of the Commonwealth's own evidence potentially pointed to another shooter, Espada, who also had a motive to kill the victim, who was with Small and the victim at the time of the shooting, and who had also reportedly confessed his guilt. **Id.** at 966-67.

_____

[8] Appellant does not specifically assert that E.B.'s statement is newly-discovered fact. He claims at one point that the Commonwealth failed to turn that statement over to the defense, but he provides no information regarding when or how he came into possession of it. **See** Appellant's Brief at 35 ("The State failed to turn over its unknown witness police statement or supplemental police statement."). As far as we know, E.B.'s statement was provided to Appellant during pre-trial discovery as required by law, and nothing in the record calls that assumption into question. Therefore, we assume that E.B.'s statement is not itself a newly-discovered fact.

- 14 -

Tyson, the mother of Espada's children, testified for the Commonwealth about some of the circumstances surrounding the shooting, including a motive for the killing. *Id.* at 963-64. After Small was denied relief on direct appeal, Tyson provided him with an affidavit indicating that she had withheld from the police, and from her testimony at Small's trial, that Espada had confessed to her soon after the shooting that he had shot the victim. *Id.* at 968. After a hearing, the PCRA court granted a new trial based on a finding that Tyson's new statement was not merely cumulative, and was not obtainable at an earlier time with the exercise of due diligence. *Id.* at 968-70. The Commonwealth appealed, and the Superior Court reversed, concluding that the testimony was cumulative because it tended to corroborate evidence at trial that had already suggested Espada's guilt. *Id.* at 970-71. Our Supreme Court vacated the Superior Court's order, and remanded for the PCRA court to make a credibility determination regarding aspects of Tyson's new testimony that appeared to recant her statement to police. *Id.* at 978-79. However, in reasoning to that result, the Court clarified its precedent that the Court had

> never foreclosed — and has actually embraced — the notion that new evidence tending to prove a material fact that was in evidence at trial is not always "merely" corroborative or cumulative, so long as it is of a higher and different grade or character. Moreover, our cases support a salutary goal of the after-discovered evidence rule: to limit continued litigation without being so rigid as to shut out newly discovered evidence from a credible source which may lead to a true and proper judgment.

*Id.* at 975.

- 15 -

Here, relying on **Small**, Appellant contends his new evidence is of higher or different grade than he previously employed to challenge Santiago's statement. However, as indicated above, the trial court instructed the jury to disregard Santiago's statement. In **Small**, by contrast, the new evidence, Tyson's new testimony contradicted the *admitted* testimonial evidence that led to Small's conviction. The "new fact" in the instant case is a new theory for the inadmissibility of a statement that had already been deemed inadmissible, a theory grounded in a foundation of mere accusations from a magazine.

Appellant simply cannot benefit from merely demonstrating new reasons to exclude Santiago's statement from his trial when that statement was not used against him in the first instance. Appellant's allegation that Santiago intentionally misquoted E.B.'s statement is specious at best, but, even if true, it would demonstrate only that that statement should have been excluded from the jury's consideration for additional reasons.

Appellant also invokes **Small** for the proposition that he is entitled to a hearing, but he fails to specify what the purpose of such a hearing would be. In **Small**, our Supreme Court determined that Tyson's new testimony required a credibility determination, and could not be accepted at face value, given the generally skeptical view the Court applies to recantation evidence. There is no analogy in the instant case. Even accepted on face value, Appellant's attempt to invoke the newly-discovered evidence exception fails. Even if Santiago's statement was the product of intentional misconduct, Appellant

- 16 -

would not be entitled to relief, because Santiago's statement was not admitted at Appellant's trial.

In sum, Appellant presents no new facts, only new theories predicated on mere accusations. Accordingly, we conclude that the PCRA court did not err in determining that Appellant's discovery of the Rolling Stone article did not satisfy the newly-discovered evidence exception to the PCRA's timeliness requirements.

### **III & IV**

Appellant next contends that he meets the newly-discovered evidence exception based on his discovery of evidence of his prior PCRA attorney's mental illness. However, Appellant avers that he first raised the matter of counsel's mental illness in a Supplemental PCRA petition that he filed in January of 2015, based on an article published on December 2, 2014. **See** Appellant's Brief 39. That petition was ultimately denied as untimely by order dated January 30, 2017. Appellant did not file an appeal from that order. The PCRA petition currently under review was subsequently filed on February 7, 2017.

It is plain from the record that Appellant raised this precise claim in a prior PCRA petition, failed to appeal from the order denying relief, and is now presenting the same claim for the second time. Thus, it is obvious that Appellant did not file the instant PCRA petition within 60 days of having discovered evidence of his prior attorney's mental illness as, by his own admission and legal filings, he has known about the matter since at least

January of 2015, yet he did not file the instant PCRA petition until 2017. Thus, Section 9545(b)(2) bars Appellant's attempt to invoke the newly-discovered evidence exception based on his discovery of his prior attorney's mental illness.

Although not specifically raised in his statement of the questions presented, Appellant also alleges that he newly-discovered evidence of a **Brady** violation regarding the testimony of David Munlyn, who purportedly had a plea deal with the Commonwealth despite having testified to the contrary at Appellant's trial. However, this issue was raised several times in Appellant's prior PCRA petitions. Indeed, it was the gravamen of Appellant's after-discovered evidence claim in his second PCRA petition, and the sole claim he raised on appeal from the order denying that petition. **See Commonwealth v. Walton**, 817 A.2d 1186 (Pa. Super. 2002) (unpublished memorandum). Appellant cannot now assert that he newly discovered the same fact that was the precise subject of litigation nearly 20 years ago in a prior PCRA petition. Likewise, he cannot assert the government interference exception, which is also predicated on his discovery of the same fact(s). Appellant presents no new facts pertaining to the alleged government interference. Accordingly, neither exception applies to the instant PCRA petition.

## V

Finally, Appellant claims that the totality of the collective errors that occurred at his trial and in prior PCRA proceedings, in addition to the

ineffective assistance of counsel provide by all of his prior attorneys, entitle him to relief. However, in raising this claim, Appellant does not present any exception to the PCRA's timeliness requirements, but for those already specifically rejected above. Thus, Appellant is not entitled to relief, as no timeliness exception applies to this claim.

Order **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/20